6996

### GRISKELL v. SOUTHERN RY.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — NONSUIT.—A RAILROAD COMPANY is not liable for the death of a young man who hears and sees a fast passenger train approaching a station, and in running to get to the station first crosses over several tracks of the defendant, climbs between two coupled freight cars and is caught and killed by the engine as he jumps down, although he was on a path used by public by acquiescence of defendant and defendant was violating the town ordinance as to speed and the statute as to crossing signals.

2. EVIDENCE—OPINION.—Question seeking an opinion as to a matter about which the jury could draw a conclusion quite as well as the witness was properly excluded.

Before PURDY, J., Cherokee, June, 1907. Affirmed.

Action by James Griskell, administrator of Charles Griskell, against Southern Railway Company. From order of nonsuit, plaintiff appeals.

*Messrs. Stanyarne Wilson* and *J. B. Bell,* for appellant, cite: *Witness, after stating facts, may give his opinion:* 19 S. C., 501; 59 S. C., 314; 72 S. C., 266, 259; 67 S. C., 359. *It was not absolute duty of deceased to stop, look and listen:* 76 S. C., 376; 72 S. C., 392; 77 S. C., 344; 78 S. C., 374. *Issue of contributory negligence here should have been left to jury:* 76 S. C., 379; 72 S. C., 392; 77 S. C., 344.

*Messrs. Sanders & DePass,* contra, cite: *The path was not a traveled place:* 1 S. C., 20; 47 S. C., 386. *Imminent danger requires more care:* 7 Ency., 435. *Defendant was guilty of negligence in running into the engine:* 95 U. S., 697; 3 Elliott, sec. 1166; 7 Ency., 436, 438. *This case is parallel with the Drawdy case:* 78 S. C., 374.

August 26, 1908. The opinion of the Court was delivered by

Mr. Justice Jones. On September 6, 1903, Charles Griskell, white, while attempting to cross the railroad track in front of defendant's moving train, was struck by the engine and killed. This action was brought by his administrator to recover damages for said death, which the complaint alleged was the result of defendant's negligence (1) in approaching the station at a great speed, in violation of the town ordinance; (2) in failing to give the signal required by statute; (3) in not having some agent at said station for the purpose of apprising plaintiff's intestate of the rapid and unsignalled approach of said train. At the close of plaintiff's testimony, a nonsuit was ordered on the ground that the negligence of the deceased brought about or contributed to his death.

The main question raised by the appeal is whether the nonsuit was proper. We think it was.

The undisputed facts show that on Sunday night, September 6, 1903, the deceased, who was between sixteen and seventeen years old, was standing with several companions

about one hundred yards from the depot, when he heard the station signal given by defendant's train, No. 38, at the overhead bridge some six or seven hundred yards away; 38 was going from Charlotte towards Spartanburg; was not due to stop at Gaffney, and was running twenty-five or thirty miles an hour. An ordinance of the town prohibited a speed through town in excess of six miles an hour. This train was behind time and was running in about the time No. 40 was due; 40 was a much slower train than 38. The deceased heard the whistle and saw the headlight of the coming train. Supposing it to be 40, and expecting his friend, Hiram Wessinger, to come from Clinton on that train, he proposed to his companions to meet the train.

They broke out and ran in the direction of the freight depot, expecting to cross over the several tracks intervening and reach the passenger depot, opposite the freight depot, before the train. They ran toward a path crossing made at the freight depot for the convenience of defendant, but which the public frequently used, with defendant's acquiescence. They chose this way because it was some nearer than to go to the passenger depot by Robertson street. When they reached the track nearest the freight depot there were a number of freight cars thereon and two stood across the path, coupled up together, as was frequently the case. The deceased was ahead and climbed over the bumpers of these freight cars and by the time he reached the ground the train was close on him.

Garfield Harman testified as follows: "Q. How far did you get between the cars? A. I got across there, and I seen it strike him. Q. Tell what you saw. A. He lit out the car, me right following him, and it jerked him around. We just jumped up between the two cars coupled together. Q. You jumped out, where did he go? A. He went right in the engine. Q. The engine caught him? A. Yes, sir. Q. How come it didn't catch you? A. I can hardly tell. Q.

He was a little ahead of you? A. Yes, sir. Q. It had already passed you? A. Yes, sir."

Cross-examination by Mr. Sanders: "Q. You and Mr. Griskell came through the same cars? A. Yes, sir. Q. Went between the same cars? A. Yes, sir. Q. When he was climbing up, where were you—on the ground just behind him? A. No, sir; both of us in between the cars about the same time. Q. One right behind the other? A. Four or five, I expect, could be between the cars at once. Q. Who was the next man to Griskell? A. Me. Q. They were coupled together, were they not?· A. Yes, sir. Q. You were the next man to Mr. Griskell? A. Yes, sir. Q. And he jumped up? A. Yes, sir. Q. And you followed him? A. Yes, sir. Q. When he jumped out, did he stop or continue right straight on? A. Seemed like he sorter stumbled. Q. Did he catch himself or fall? A. No, sir; it took him and carried him right around into it."

The complaint alleges that intestate was proceeding across said track to the point of his destination when he was struck by the engine of defendant's train No. 38 and killed. The body was found some feet from the track, on the passenger depot side, the condition and position of the body indicating that he had not been run over by the train, but thrown off by the cowcatcher of the engine.

There was testimony that the bell did not ring until after the collision. The train came to a stop after the collision and pulled back to the depot. The accident happened within five hundred yards of a street crossing. Conceding that defendant was negligent in not giving the statutory signals, this could not have been a proximate cause of the injury, since intestate heard the station blow, saw the headlight, and was racing to beat the train to the depot. _Barber_ v. _Ry._, 34 S. C., 444, 13 S. E., 630. Conceding that the speed of the train was in violation of the town ordinance, and there would probably have been no collision if the speed had not exceeded six miles an hour, still the intestate's reckless-

ness in attempting to cross the track in front of the fast moving engine, which he should have known was almost upon him, so manifestly contributed to his death that there could be no recovery therefor.

The evidence shows there was sufficient space between the freight track and the passenger track to stand in safety, as Harman did on this occasion. If intestate had exercised ordinary care in the use of his senses, he would have observed and avoided the peril of attempting to cross the track in front of the moving train. The nonsuit is sustained by the cases of *Barber* v. *R. R. Co.,* 34 S. C., 448, 13 S. E., 630, and *Drawdy* v. *R. R. Co.,* 78 S. C., 374.

The exception to the exclusion of the testimony can not be sustained. The witness, Hallman, was asked this question: "If the train had been No. 40, coming in,—you say it is a good deal slower than 38,—would you not have had plenty of time to get across?" The answer to this question was properly excluded, as it would have been the mere opinion of the witness as to a matter concerning which the jury could draw a conclusion quite as well as the witness. Besides, if the witness had answered "yes," the testimony could not have altered the result.

The judgment of the Circuit Court is affirmed.