8786

KIRKLAND v. AUGUSTA-AIKEN RY. & ELECTRIC CORPORA-
TION.

(81 S. E. 306.)

ELECTRIC RAILROADS.   INJURIES TO LICENSEE ON TRACK.   WILFUL OR
  WANTON DISREGARD OF DUTY.   CONTRIBUTORY NEGLIGENCE.   INSTRUC-
  TIONS.

1. Evidence that a proper street car headlight would throw light on
   the track 200 yards ahead of the car, and that the headlight on the
   car by which decedent was killed only threw a light for from 35 to
   50 feet, made it a question for jury whether or not the railway com-
   pany was guilty of wilfulness or wanton failure to use a proper head-
   light and keep a lookout for licensees on its track.
2. In an action for death on a street car track at night, evidence that
   it was the custom of motormen to eat their meals while running the
   car, held admissible to show wilful and wanton acts, though no such
   specific acts of negligence were alleged in the complaint.
3. In an action for damages arising from death in a collision with a
   street car at night, the Court instructed that, if intestate came to
   his death through his own negligence plaintiff could not recover, and
   that, though defendant was negligent, and his negligence concurring
   with defendant's negligence, contributed as to his injury to any
   extent as a proximate cause thereof, and without which it would
   not have happened, plaintiff could not recover, unless defendant
   acted wilfully or wantonly.  The Court further instructed that,
   while it is the general duty of motormen to exercise ordinary care
   to avoid injuring persons on the track, it is as much the duty of
   such persons to exercise reasonable prudence to avoid being injured;
   so that, if decendent lay down on the tracks in a drunken stupor,
   or went to sleep thereon, and such acts amounted to negligence, and
   such negligence concurring with defendant's negligence, "contributed
   to his injury to any extent as a proximate cause thereof, without
   which it would not have happened, then plaintiff cannot recover."
   *Held,* that the instructions sufficiently submitted contributory negli-
   gence as a proximate cause of decendent's death, so that further
   charges requested on contributory negligence were properly refused.

FOOTNOTE—The question of the necessity of headlights on street cars
is discussed in a note in 26 L. R. A. 300.

As to whether wantonness or wilfulness, precluding defense of con-
tributory negligence, may be predicated of the omission of a duty before
the discovery of a person in peril on a railroad or street railway track,
see note in 21 L. R. A. (N. S.) 427.

4. Where decedent, when struck by a street car, was at least a licensee, so that the company owed him a duty to look out for him, if, in an action for his death the company desired a charge on intestate's right to be on the track on the theory that he had gotten outside the public highway when struck, it should have requested such charge.

5. In an action for decedent's death being struck by a street car, the Court charged that, where it is a motorman's duty to keep a lookout on the track for licensees, he cannot excuse his negligence in injuring a licensee by showing that, at the time of the injury his attention was held by another duty, for, in such cases the question still remained whether at that time the motorman was exercising due diligence in keeping a lookout ahead on the track as required. *Held,* that the instruction was not erroneous as a charge on the facts, in that it prevented the jury from considering whether the motorman, because of performing his duty of watching intending passengers, was not excusable in not seeing intestate sooner.

6. The Court instructed, in an action for decedent's death from being struck by a street car, that, while a drunken person would not be run over unless he went on a track, yet the fact that one is on the track at a public·crossing in an apparently helpless condition need not necessarily be contributory negligence, since, if that were the law, then no apparently helpless person, from drink or other cause, on a railway track could recover damages; that the law does not prevent one in such case from recovering, even though his condition be due to his own negligence, if the jury further believe that, notwithstanding such negligence, the motorman could have avoided the injury by exercising due diligence in keeping a reasonable outlook ahead, so as to discover him in time to avoid injuring him, but failed to do so, then, if the motorman's neglect, and not the negligence of the person injured, was the proximate cause of the injury, the company would be liable. *Held,* that the instruction was not erroneous as a charge on the facts or otherwise.

Before SPAIN, J., April, 1913. . Affirmed.

Action by Ella Kirkland, as administratrix of the estate of B. D. Kirkland, deceased, against Augusta-Aiken Railway & Electric Corporation, under Lord Campbell's act, to recover damages arising from the death of her intestate, alleged to have been caused by the negligent, wilful and wanton acts of defendant. Judgment on verdict for $5,000.00 for plaintiff. Defendant appeals.

' *Messrs. Boykin Wright, George T. Jackson* and *J. B.' Salley,* for appellant, cite: *Nonsuit on direction of verdict on ground that there was no evidence tending to show wilfulness or recklessness:* Rule 77, Supreme Court; 75 S. C. 211; 72 S. C. 263; 75 S. C. 187; 79 S. C. 154; 65 S. C. 444. *Inadvertent failure to keep lookout:* 79 S. C. 210, 211; 33 Cyc. 789. *Contributory negligence:* 91 S. C. 333; 56 S. C. 95; 93 S. C. 58; 86 S. C. 106, 112; 2 Thompson Negligence, secs. 1787 to 1792, 1747; 51 La. Ann. 1689; 26 So. 411; 4 N. W. 605. *Intoxication of decedent:* 3 St. Ry. Reports 795; 33 Cyc. 840; 93 S. C. 58; 5 St. Ry. Rep. 17; 43 So. 33. *Charge on facts:* 93 S. C. 57; 71 S. C. 42; 61 S. C. 563; 71 S. C. 159; 90 S. C. 414, 423; 91 S. C. 201; 69 S. C. 439; 71 S. C. 62; 56 S. C. 94, 95; 61 S. C. 565; 38 Cyc. 1600. *Evidence of habit or custom irrelevant:* 1 Greenleaf Ev., sec. 14k; 69 S. C. 15-17; 68 Me. —; 77 Me. 62; 98 N. E. 209; 8 St. Ry. Co. 336; 133 N. Y. App. Div. 461; 27 S. C. 457; 82 S. C. 481-3. *Methods on other roads:* 27 S. C. 461; 60 S. C. 167-9. *Cases distinguished:* 68 S. C. 488; 70 S. C. 183; 86 S. C. 113; 90 S. C. 266; 90 S. C. 334, 335; 93 S. C. 329; 93 S. C. 17; 93 S. C. 49.

*Messrs. Croft & Croft* and *Claude E. Sawyer,* for respondent, cite: *Contributory negligence no defense against liability for acts of wilfulness or wantonness:* 93 S. C. 25. *Inference to be drawn by the jury:* 70 S. C. 183; 93 S. C. 25. *Evidence of habit having connection with intentional wrongful acts:* 54 S. C. 505; 65 S. C. 97. *Evidence not prejudicial:* 91 S. C. 516. *Ruling on inadmissibility harmless:* Thompson Negligence, sec. 3777. *Contributory negligence, drunkenness:* Beach Contributory Negligence, sec. 390. *Motion for nonsuit was general upon whole case:* 73 S. E. 433; 72 S. C. 260. *Charge to jury:* 87 S. C. 327; 86 S. C. 115; 45 S. C. 156; 38 Cyc. 1601, 1602. *Not on facts:* 52 S. C. 442; 80 S. C. 335; 63

S. C. 272-288.  *Duty to keep lookout:* 79 S. C. 120; 58 N. W. 1051; Thompson Negligence 1387.  *As to intoxication:* 93 S. C. 56.

April 13, 1914.

The opinion of the Court states the facts and was delivered by MR. JUSTICE FRASER.

This is an action for damages for the negligent and wilful and wanton killing of plaintiff's intestate, B. D. Kirkland.  The undisputed evidence shows that the deceased was under the influence of liquor in Aiken.  That a policeman started to arrest him, but one of his friends promised to take charge of him and get him off on the defendant's car for his home in Madison, a village community near Graniteville, in Aiken county, in this State.  That the deceased left the car at the Lutheran Crossing, one of the stops in Graniteville, and that the Lutheran Crossing was the proper place for the deceased to leave the car.  The deceased alighted, as such passengers were accustomed to alight, on the opposite side of the car from his home, and started for his home by crossing the track and walking up the track on a path that was usually used by people living in that section for travel in going from one side of the Lutheran Crossing to another, and also by passengers taking the cars and leaving the cars for their homes.  That the Lutheran Crossing was a flag station, but one of the regular stations, as most of defendant stations were flag stations.  That the Lutheran Crossing was a public highway.  That near the crossing, within a few feet, but outside of the highway, there was a ditch or "gully" that ran up near the crossties, and the path passed between the head of the "gully" and the crossties of the defendant's road.  A few minutes after the car from which the deceased had alighted passed on, another car of the defendant came in the opposite direction and struck the deceased and killed him.  Two boys, who were attending a

show near by, started to the Lutheran Crossing to take the car, and were going along this path, but when they got near the gully they saw an object lying across the path, one end in the short slope to the gully and the other end up in the crossties at the rail. They were afraid to go to it, but went round on the other side to the Lutheran Crossing and stopped there and waited for the headlight of the car to show what the object was, until the car was about forty feet from the deceased. It was too late then to stop the car or for the boys to help the deceased out of the way of danger. All the witnesses who testified on the subject said that a proper headlight properly adjusted would light up the track for two hundred yards with varying brightness, according to conditions. The body was dragged from the gully to and across the Lutheran Crossing, a distance of about one hundred and twenty feet.

The plaintiff alleged that the deceased was apparently in a helpless condition on the track, and was seen, or ought to have been seen, by the motorman, and that the death was due to the negligent and wilful and wanton disregard of its duty to those who were to be expected to be on the track.

The answer alleged that the deceased was a trespasser on its right of way. Denied want of care and pleaded contributory negligence, in that the deceased, while in an intoxicated condition, laid down on defendant's track, and that the deceased caused his own injury by lying down on defendant's track while in an intoxicated condition.

At the trial there was a motion for a nonsuit, which was refused; a motion for a direction of a verdict, which was also refused. There was a judgment for the plaintiff and defendant appealed upon the following exceptions:

"1. The presiding Judge erred in allowing the plaintiff to introduce in evidence over defendant's objection the financial statement showing the wealth of the defendant, for the reason that as there was no evidence whatever

tending to show wilfulness, wantonness, or recklessness on the part of the defendant on which to base a verdict for punitive damages, the admission of · such evidence was incompetent, harmful and prejudicial to the rights of the defendant."

This Court cannot say that there was no evidence on which to base punitive damages.

(Appellant, in his argument, says that exceptions IV, VII, X and XI raise the same quesiton.)

There was evidence that a proper headlight, properly adjusted, would throw light on the track for two hundred yards ahead of the car. The two boys who were coming to the station without any light, saw the deceased; went around him and watched him from the crossing, waiting for the light to fall upon him. Joe Taylor, defendant's witness, said: "We were looking at the object all the time. When the headlight fell on his body, I looked to see how close the car was, and it was in thirty-five or forty or fifty feet of him." There was no witness who testified that the car could have been stopped in fifty feet. There was testimony, therefore, to show that the appellant was running its car that night with a light that afforded the motorman no possibility of stopping in time to avoid any sort of danger to people it might have been expected to find in danger on the track, or to its passengers on its cars. Was that a wilful and wanton disregard of all duty? That was a question for the jury. The appellant assumed all the way through the case that the deceased chose the railroad track for his bed and deliberately composed himself there for his drunken sleep. There is slight, if any, evidence of it. The deceased was sober enough to know of the approach to his station; walk down the car while it was still in motion; get off the car and start for home. Within a hundred feet of the place of alighting he is found with his feet in the declivity of a gully and his shoulders up in the crossties and his head at the iron rail.

The physical surroundings do not conclusively show that he deliberately made that place his bed.

This exception is overruled.

Exception II:

"The presiding Judge erred in allowing the plaintiff to elicit testimony from the witness, Gary Seigler, over the defendant's objection, that it was the custom or habit of motormen running cars on defendant's road to eat their meals on the car while so doing. The error being, as then and there urged, that there was no such act of negligence alleged in the complaint, and the investigation being as to the alleged negligent operation of the particular car which ran over the deceased, any testimony as to acts, conduct, habit or custom of motormen operating other cars of defendant was irrelevant and incompetent, and the admission of said testimony was harmful and prejudicial to the rights of the defendant."

This exception cannot be sustained. The evidence did not tend to prove negligence on this particular occasion, but was admitted by the trial Judge under the allegation of "wilful and wanton acts," and this ruling is fully sustained in principle by *Mason* v. *Railway Co.,* 58 S. C. 74, 13 S. E. 440, 53 L. R. A. 913, 79 Am. St. Rep. 826, and *Mack* v. *R. R. Co.,* 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679, 68 Am. St. Rep. 913.

Exception III:

"The presiding Judge erred in not allowing the defendant to prove by the witness, Cary Seigler, that the air brake method of stopping a car at the time of this accident was the best and most approved method, and that it was the universal method in use over the country, at the time, and in confining the defendant to showing what method the defendant used—for the reason that such testimony was competent to go to the jury along with the other evidence as bearing on the question whether defendant's motorman was negligent in using the air brake method in stopping the

car which ran over deceased, and the exclusion of said testimony was harmful to the rights of the defendant."

This exception is not well taken. Gary Seigler testified as follows:

"Q. Which was the best and most approved method of stopping a car, the air brake or emergency? A. The air brake. Q. Do you know whether that was the universal method over the country at that time? A. Yes, sir."

The record does not show that this was stricken out.

Exception IV has already been disposed of.

Exception V:

"The presiding Judge erred in charging the plaintiff's fourth request, which was as follows, the italics being ours:

'That in all cases where a licensee has been run over and injured anywhere along the track, while *in an apparently helpless condition,* it is not enough *in an action alleging negligence to excuse the railroad company from damages,* for it is to show that the motorman in charge of the car *could not stop in time to prevent the injury after he had seen the person on the track,* but in such cases the question of liability depends on the fact whether the motorman, by the exercise of reasonable care in *keeping a lookout ahead,* could have seen the person on the track in time to stop and prevent the injury, and if he *negligently failed to exercise due care,* in consequence of which the licensee was injured as the proximate cause, the defendant company would be liable in damages.'

"The error in said charge being:

"(a) It entirely ignored the defendant's defense that the presence of deceased on the track in an 'apparently helpless condition' was due to his own negligence, and that this contributed as a proximate cause to his death, which would have been a complete defense 'in an action alleging negligence.'

"(b) It eliminated from the consideration of the jury the cause of the helpless condition on the track of deceased,

and, in effect, specifically directed the jury that if a particular act of omission—the failure to keep a lookout—was the main or proximate cause of the injury, without which it would not have happened, the plaintiff could recover, although it should be found that the deceased's being on the track in a helpless drunken condition was negligence on his part and contributed as a proximate cause to the injury as contended by defendant.

"(c) Because, even if the defendant was negligent in not keeping a proper lookout and in 'negligently failing to exercise due care,' the plaintiff could not recover if her intestate's being on the railroad track in a drunk and helpless condition was a proximate cause of his injury, and was due to his own negligence. The error of ignoring this defense and in effect charging to the contrary was manifestly highly prejudicial."

This exception cannot be sustained. Plaintiff's fifth request to charge was as follows:

"5. That while it is true, a person guilty of contributory negligence in the slightest degree cannot recover damages for his injuries, yet the law does not require that the person injured shall be free from all negligence, for even if he were guilty of negligence, yet if you further find that the defendant was also guilty of negligence and the defendant's negligence and not that of the deceased formed the direct or proximate cause of the injury, then the defendant company would be liable in damages.

"That means this, that the defendant's negligence must be the direct and proximate cause of the injury."

Defendant's fourth request to charge was as follows:

"4. 'The jury is further charged that if you find that plaintiff's intestate came to his death through his own negligence, then the plaintiff cannot recover.'

"I charge you that. If Mr. Kirkland's own negligence was the direct and proximate cause of his death, the plain-

6—97

tiff cannot recover.  Nor can he recover if he was guilty of contributory negligence."

Defendant's fifth request to charge was as follows:

"The jury is further charged that even though you find that the defendant was negligent in running over plaintiff's intestate, yet if you likewise find that plaintiff's intestate was also negligent, and his negligence combining and concurring with the negligence of the defendant contributed to his injury to any extent as a proximate cause thereof, and without which it would not have happened, the plaintiff cannot recover, unless you further find that the defendant acted in a wilful, wanton, or reckless manner in running over him.

"I charge you that."

Defendant's seventh request to charge was as follows:

"7. The jury is further charged that while it is the general duty of those in charge of a car to exercise ordinary care to avoid injuring persons on the railroad track at places where they may be expected to be found, yet it is just as much the duty of such persons to exercise proper care and reasonable prudence to avoid being injured.  So, that even though you should find that the defendant was negligent in the operation of its car in any particular, yet if you also find that the plaintiff's intestate went upon defendant's track and lay down thereon in a drunken stupor, or went to sleep thereon, and that such acts on his part amounted to negligence (the facts being entirely for you to determine), and such negligence, combining and concurring with the negligence of the defendant, contributed to his injury to any extent, as a proximate cause thereof, without which it would not have happened, then the plaintiff cannot recover.

"Both must exercise care.  I charge you that."

These requests which were charged, gave the appellant the full benefit of contributory negligence, even in the slightest degree, if it were a proximate cause.

It is true the deceased had crossed the line of the public highway, and it may be his *right* was gone; but there was no evidence that he was a trespasser.    The undisputed testimony was that the path in which the deceased was lying had been used by the public before the railroad was built and continuously ever since, and was one of the approaches to the station.

The deceased was unquestionably at least a licensee and the defendant owed him a duty to look out for him.    If the defendant desired to have his Honor charge the difference between the right and the duty, it ought to have been requested.    It is as much as a trial Judge can be expected to do to rule correctly on questions raised.

Exception VII has already been disposed of.

Exception VIII:

"The presiding Judge erred in charging plaintiff's eighth request, that where it is the duty of a motorman to keep a lookout on the track for licensees, he cannot excuse his negligence in injuring the licensee by showing that at the time of the injury his attention was on another duty required of him.    .The error being that said charge is not a sound proposition of law, was a charge on the facts, and prohibited the jury from considering whether the motorman, in watching the intended passengers at the station, as was his duty to do, was not guilty of negligence in not seeing intestate sooner, and thereby deprived the defendant of an important right, to its great injury and damage."

This is only a part of the eighth request to charge.    The latter part of the charge is "for in all such cases the question still remains whether at the time of the injury the motorman was exercising due diligence in keeping a lookout ahead on the track, as required of him by law."

This exception cannot be sustained.

Exception IX:

"The presiding Judge erred in charging the plaintiff's ninth request, which was as follows:

'9. That it is true, a drunken person would not be run over by a car unless he were on the track, yet, the fact alone that a person is on a railway track at a public crossing, in an apparently helpless condition, need not necessarily be contributory negligence, nor will it necessarily defeat him from recovering damages for his injuries, for if that were the law then no apparently helpless person from drink or other cause on a railway track, could recover damages; in such cases the law does not bar the person from damages, even though his presence on the track in an apparently helpless condition be due to negligence on his part, for if the jury further believes from the evidence that notwithstanding such person's negligence, the defendant motorman could have avoided the injury by exercising due diligence in performing his duties, and in keeping a reasonable lookout ahead so as to discover him in time to avoid injuring him, but failed to do so, then if such failure of the motorman to do his duty, and not the negligence of the person injured, formed the main and proximate cause of the injury, without which it could not have happened, the railroad company would be liable in damages.'

"The error being:

"(a) That said request was a charge on the facts in that it instructed the jury that certain facts would not necessarily constitute contributory negligence, when this was a question of fact entirely for the jury.

"(b) The said request instructed the jury that even if plaintiff's presence on the track in a drunken, helpless condition was due to his own negligence, they should still find a verdict for the plaintiff if the defendant's negligence formed the main and proximate cause of the injury. Such

charge completely destroyed the defendant's defense of contributory negligence and was harmful error.

"(c) The said request, as a whole in effect, expressed the opinion of the trial Judge to the jury, that the plaintiffs should recover, contrary to the provisions of the Constitution, which inhibits him from intimating an opinion on the facts.

"(d) The request partook of the form of an argument and advocacy in behalf of plaintiff and placed the Court in giving said instruction in the unwitting attitude of an advocate of plaintiff's side of the case, to the manifest prejudice of defendant.

"(e) It was error because the jury was in effect instructed that if defendant's motorman failed to 'keep a reasonable lookout ahead,' and such negligence, and not the negligence of plaintiff, 'formed the main and proximate cause' of the injury, the company would be liable; notwithstanding the jury might also have believed that plaintiff's conduct in voluntarily becoming drunk and lying down asleep on the track was negligence and contributed in some slight degree as a proximate cause (though not as the 'main and proximate cause') to the injury.

"(f) It was also error because that portion of the charge in which it is stated that 'the fact alone that a person is on a railroad track at a public crossing,' etc., implies that the deceased was run over on a 'public crossing,' when there was no evidence to justify this charge, and is also an expression of opinion on the facts."

The difference in these requests and that in the *Craig* v. *R. R.,* 93 S. C. 49, 76 S. E. 21, is that in the Craig case the right to recover was made to depend solely on the negligence of the motorman; here the right of recovery depended on the negligence of the motorman and the absence of negligence as a proximate cause on the part of the deceased.

Exception X and XI have been disposed of above.

The judgment of this Court is, that the judgment appealed from is affirmed.

MR. JUSTICE HYDRICK dissents.

MR. JUSTICE GAGE was not on Supreme Bench when this case was heard.