## 10741

### WIDEMAN v. HINES, DIRECTOR GENERAL

#### (109 S. E. 123)

1. RAILROADS—NEGLIGENCE HELD QUESTION FOR JURY.—In an action for the death of a passenger in an automobile struck by a train, where there was evidence that the driver looked before attempting to cross, that his view was obscured, and that the defendant did not give the statutory signals, the determination as to who was negligent was for the jury.

2. RAILROADS—OMISSION OF STATUTORY SIGNALS NEGLIGENCE.—The failure to give the statutory signals of the approach of a train to a crossing is negligence per se.

3. NEGLIGENCE—QUESTION FOR JURY ON CONFLICTING EVIDENCE.—Where the evidence is conflicting, the issues of negligence and contributory negligence are for the jury.

4. RAILROADS—CHARGES AS TO SIGNALS HELD PROPER.—In an action for death at a crossing, the Court properly read to the jury the statute (Civ. Code 1912, §§ 3222, 3230) requiring signals and imposing liability for neglect to give signals, unless decedent was guilty of gross or willful negligence or violation of law contributing to the injury.

5. TRIAL—INSTRUCTION AS TO RAILROAD'S LIABILITY FOR DEATH RESULTING FROM FAILURE TO GIVE STATUTORY SIGNALS NOT REVERSIBLE, IN VIEW OF WHOLE CHARGE.—In an action for death of passenger in an automobile struck by a train at a crossing, where the Court fully charged as to the burden of proof and effect of defendant's negligence, and plaintiff's contributory negligence, and read them the crossing statutes (Civ. Code 1912, §§ 3222, 3230) under which defendant was liable if it failed to give the statutory signals, unless decedent was guilty of gross and willful negligence or violation of law contributing to the injury, instructions that, if defendant's failure to give the statutory signals was the proximate cause of the injury, plaintiff could recover, unless decedent was guilty of want of slight care, and that the failure to give such signals was some evidence of willfulness and wantonness, were not reversible error.

6. APPEAL AND ERROR—POINTS NOT MADE IN CIRCUIT COURT CANNOT BE CONSIDERED BY SUPREME COURT.—Points not made in the Circuit Court cannot be considered by the Supreme Court.

Before SEASE, J., Greenwood, April, 1920.   Affirmed.

Action by Jane Wideman as Administratrix of J. N. Wideman, deceased, against Walker D. Hines, Director General of Railroads. From judgment for plaintiff defendant appeals.

The portions of the Judges charge to which defendant excepted were as follows:

"If you find that the defendant failed to give the statutory signals, and that that was the proximate cause of the alleged injury and damage, the plaintiff will be entitled to recover unless you find that those in charge of the operation of the automobile were guilty of want of slight care."

And—"I should charge you that the failure to give the statutory signals is some evidence of willfulness and wantonness."

*Messrs. Grier, Park & Nicholson,* for appellant, cite: *Plaintiff must show negligence or willfulness by defendant and that the injury was a result of such negligence or willfulness:* 21 S. C. 466; 78 S. C., 193; 90 S. C., 42; 81 S. C., 193; 81 S. C., 100; 33 S. C., 198. *Duty upon every capable person when about to cross a railroad track:* 94 S. C., 145; 72 S. C., 389; 76 S. C., 368. *Where it appears from undisputed testimony that deceased by the use of ordinary care in looking and listening would have avoided collision a verdict for defendant should have been directed:* 94 S. C., 145; 72 S. C., 389; 76 S. C., 368; 78 S. C., 379; 81 S. C, 193; 113 U S., 615; 95 U. S., 161; 97 U. S., 697; 150 U. S., 245. *Duty to stop, look and listen where view is obstructed:* 21 L R. A. (N. S.) 794; Ann. Cas. 1913-B, 697 and Note 681. *Where testimony is opposed to well established and unquestioned laws of nature, and scientific facts it will be disregarded:* 28 L. R. A. (N. S.) 648; Elliott Evid. Par. 39. *Judge cannot instruct jury that there is evidence of any particular fact, nor state the force and effect that should be given to any particular fact:* 90 S. C., 266; 105 S. C., 128; 87 S. C., 193; 83 S. C., 56. *Suit against Director General is in effect a suit against the Government:* 26 R. C. L. Sec. 63, p. 1458; Sec. 66 p. 1461-2; 188 U. S. 400. *If Federal Control Act (Act March 21, 1918, Sec. 10) does not authorize suit Court has no jurisdiction:* 254 Fed. 875; 254 Fed. 881; 263 Fed. 211. *Crossing statute does not create a "common carrier liability:* 1 Civ. Code 1912, Sec. 3230. *Failure to give statutory signals as evidence of willfulness:* 90 S. C. 266; 93 S. C., 51; 97 S. C., 72; 99 S. C., 277; 101 S. C., 8; 105 S. C., 128; 106 S. C., 393; 87 S. C., 193; 91 S. C., 216; 83 S. C., 56; 83 S. C,, 328.

*Messrs. Tillman & Mays*, for respondent, cite: *Facts and circumstances here different from those in Cable case*: 94 S. C., 144; *but similar to the Callison case*: 105 S. C., 128. *Points not raised on circuit will not be considered on appeal*: 54 S. C., 345; 92 S. C., 170; 67 S. C., 551. *Crossing statute binding on Director General*: 173 N. W. 440; 174 N. Y. S., 60.

October 10, 1921.

The opinion of the Court was delivered by Mr. Justice Watts.

This is an appeal from judgment rendered and entered for $5,000. Plaintiff's intestate was killed at a crossing collision with one of the trains of C. & W. C. Railway Company, operated by the defendant. The verdict of the jury was for actual damages. The exceptions, five in number, can be considered under the following heads:

1, 2   Was it error on the part of his Honor in refusing to direct a verdict as moved for by the defendant?

In making the motion defendant relied, in a large measure, on the case of *Cable Piano Co. v. Southern Ry. Co.* 94 S. C., 144, 77 S. E., 868. The facts of this case are very different from the facts of that case. In that case no other inference could be drawn than that it was the failure of the driver to look. This was the sole cause of the injury. In this case there was conflict of evidence, and that presents an entirely different situation. There is plenty of evidence that the driver of the car looked, and his view was cut off by the way the public road ran, and the way the railroad ran, and that his view was obstructed by a ridge and the contour of the land and weeds and bushes. There was evidence that the railroad did not give the statutory signals; this was negligence per se. There was evidence to be submitted to the jury for their proper determination as to who was negligent.

The plaintiffs by evidence showed defendant was negligent; the defendant introduced evidence showing plaintiff's intestate was. This Court nor the Circuit Court is called upon to decide such issues when there is a conflict of evidence, and more than one inference can be drawn. The jury is the one to decide such issues. *Cable Piano Co. v. Railway,* was decided upon the particular facts of that case; so was *Callison v. Railway,* 106 S. C., 123, 90 S. E., 260; and every other case will be so decided. His Honor committed no error in refusing to direct a verdict.

Did his Honor restrict the defense to a want of slight care in his charge, and did he commit an error in his charge with reference to statutory signals, as complained of in exceptions 2 and 3? The charge taken as a whole could not have prejudiced the defendant as complained of. He read to the jury the statute (Civ. Code, §§ 3222, 3230) in reference to crossings. This was a compliance of law as decided in *Mercer v. Railway,* 44 S. E., 750. His charge was full and clear, and did not deprive the defendant of the defense relied on, and he did not invade the province of the jury by a charge on fact or intimation that was prejudicial as to the force or effect of the evidence. He fully charged the law, and left to the jury to find the facts, uninfluenced in any way as to what he thought. The attention of the Court below was not called to the questions relied on in Exceptions 4 and 5. The points were not made in Circuit Court, and cannot be considered by us, but we will say in passing there was no merit in them.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting): The intestate, John Wideman, was killed at a railroad crossing by a col-

lision between the automobile in which he was riding and
an engine "running light" (that is, without a train) on De-
cember 18, 1919. The case was tried before Judge Sease
and a jury April term, 1920, and resulted in a verdict of
$5,000 in favor of the plaintiff.

At the close of all of the testimony the defendant made
a motion for a directed verdict in his favor upon two
grounds: (1) That there is no testimony tending to es-
tablish the allegations of negligence as the proximate cause
of intestate's injury and death, and no testimony tending to
establish wilfulness and wantonness; (2) that the testimony
shows conclusively that intestate's injury and death was
due to and caused by his own contributory negligence and
his gross and wilful negligence under the statute, as the
direct and proximate cause of his injury and death, and
without which same would not have happened.

It will therefore be necessary to make a statement of the
facts and circumstances attending the collision:

The railroad at the locus in question, runs approxi-
mately east and west, between the two stations of Bradley
and Troy; between these two stations is a crossing of the
railroad and the highway which runs from Abbeville to
Edgefield; about 200 yards south of the crossing is what
has been known for many years as "Chiles' crossroads," a
crossing of the highway above referred to, and the high-
way between Bradley and Troy; the highway last referred
to runs from Bradley towards Troy, in a measure parallel
with the railroad and on the south side of it; the intestate
lived on the north side of the railroad, and, returning to
his home from Bradley, along this highway, he was com-
pelled to cross the railroad at the crossing referred to; he was
riding in an automobile owned by him and driven by his son;
the driver was on the left front seat, and the intestate on
the right, with another colored man sitting in his lap; three
other colored men were on the back seat; the party left

Bradley in the afternoon bound for home; the living occupants of the car testified that they were traveling at the rate of from 10 to 15 miles an hour, until just before reaching the crossing when they speeded up to make the incline which led up to the crossing; at Chiles' crossroads they turned to the right, making for the crossing; about 200 feet from the crossing is the mouth of a cut, extending some 500 feet back towards Bradley, the deepest part of it being some 10 or 12 feet deep; along the top of the banks of the cut were some weeds and small bushes, and in the field on the right, as they turned into the Abbeville road, cotton and corn were planted, both naturally having been harvested at that time of the year; upon the question whether or not the engine could have been seen after they turned into the Abbeville road, Lewis Whitlock, one of the occupants of the car, stated that it could not have been seen; John Wideman, the driver, made no statement as to this; Daniel Wideman, another of the occupants, stated:

"Looking to the right of the crossroad you can see the top of an engine through the cut and when it comes out of the cut you can see it all right before its gets to the crossing."

The witness, Lewis Whitlock, stated that he was looking to the front, "looking straight ahead"; his statement, therefore, that the engine could not be seen coming through the cut goes for nothing; the witness for the defendant testified that the cut was not more than 10 feet deep at any point, and that the top part of an engine could easily have been seen at any point from the crossroads to the railroad crossing. In view of the testimony both for the plaintiff and for the defendant, I think that it is abundantly established that the engine could have been seen coming through the cut at any point along the road from the crossroads. It further appeared that the distance from the crossing to the mouth of the cut was 200 feet, and that at a point 30 feet

from the crossing the engine could have been seen on the track 500 feet in the direction of Bradley; the driver of the car made no stop or slacking of speed between the crossroads and the crossing, but in fact speeded up to make the incline. The fact that a witness states that he looked and did not see the engine goes for nothing if the situation is such that if he had looked he would have seen.

"Nor will he be permitted to say that he did not see what he must have seen, had he looked, or that he did not hear what he must have heard, had he listened." *Hines v. Smith* (C. C. A.) 270 Fed. 132.

I think that the case comes squarely within the Cable case and is ruled by it. The only difference between the two cases that I can see is that in the Cable case it was conceded that, approaching the crossing, a train could have been seen for three-quarters of a mile; while here, notwithstanding the testimony of the plaintiff's witnesses, it is contended that the engine could not have been seen, a fact that has absolutely no testimony to support it.

But assume that the engine could not have been seen at all points along the road between the crossroads and the crossing, as it came through the cut; it is well-established law that, the more dangerous a crossing may be, the greater vigilance is required of both the traveler and the railroad company; if the traveler cannot see, the demand is imperative upon him that he listen for an approaching train, and, if listening will not avail him on account of the noise of his own vehicle, it is his duty to stop. The railroad track itself is a warning of danger; he cannot go heedlessly upon it, with increased speed, without exercising the senses which Providence has given him. The most available sense that can be exercised is vision. The Cable case holds that, if by looking he could see the approaching train, and he did not look, he is guilty of gross contributory negligence. If that sense of vision should be rendered useless by obstructions,

does that fact relieve him of the necessity of using such other senses as may avail? Does it give him a license to rush into a place of known danger without the use of other means available to him of discovering what his vision could not discover? As a matter of fact, his sense of hearing is a quicker and more reliable detective than his sight, particularly where the train is passing through a cut. There cannot be a doubt but that, if he had given this sense full opportunity, by stopping his car, if necessary, the accident would not have occurred. He did not use a single sense that was available to him on this occasion, and how can it be said that he was in the exercise of even slight care? Slight care denotes some care, however small, and if he did not use any at all it follows that he did not use even slight care; and if he did not use slight care, he was guilty of gross negligence.

Where the facts are not in dispute, gross negligence is a question of law for the Court, and not one of fact for the jury. *Cable Piano Co. v. Railway Co.*, S. C. 143, 77 S. E. 868. *Jarrell v. Railway Co.*, 58 S. C. 491; 36 S. E., 910.

It cannot be laid down as a hard and fast rule that, in every case, the duty of a traveler on the highway approaching a railroad crossing requires of him, as a legal obligation, to stop, look and listen for a train. So much depends upon the circumstances of the particular case, the location of the crossing, the vehicle, the view to be had of the track ahead, the passing of other trains, etc. The circumstances may require him to stop and listen, or to stop and look, or to look, or to listen. In every case that has ever happened, or that can be conceived, as a matter of law, the traveler must exercise at least one of these functions. If the view be unobstructed, he need not stop, for his movement is no impediment to his vision, but he must look; if the view be obstructed, the function of vision is rendered useless, and he is not required to do the vain thing of looking, but he must stop and listen; it is con-

ceivable that, even if the view be obstructed, he may not be required to stop, for. his movement may be so noiseless as not to impair the function of hearing and listening would be all that should be required of him If it should appear that the traveler .did not stop, did not look, and did not listen, the question whether or not his view was obstructed is of no consequence; for in the one event he failed to stop and listen, and the other he failed to look.

The law imposes upon every capable person the duty of observing due care for his own safety when approaching a railroad crossing, which necessarily involves the exercise of his senses. *Cable Piano Co. v. Railway Co.,* 94 S. C., 145; 77 S. E., 868; *Bamberg v. Railway Co.,* 72 S. C., 389, 51 S. E., 988; *Osteen v. Railway Co.,* 76 S. C., 368, 57 S. E., 196.

It is not enough for plaintiff to testify that he did not see and did not hear an approaching train before undertaking to cross a railroad track at a public highway crossing. The law imposes on him the positive duty of exercising due care and making ·proper use of his senses of sight and hearing, and where it appears from the undisputed testimony that, by the exercise of ordinary care in looking or listening, he could have avoided a collision at the crossing, it is the duty of the Court to direct a verdict in favor of the defendant. *Cable Piano Co. v. Railway Co.,* 94 S. C., 143, 77 S. E., 868; *Bamberg v. Railway Co.,* 72 S. C., 389, 51 S. E., 988; *Osteen v. Railway Co.,* 76 S. C., 368, 57 S. E., 196; *Drawdy v. Railway Co.,* 78 S. C., 379, 58 S. E., 980; *Griskell v. Railway Co.,* 81 S. C., 193, 62 S. E., 205; *Schofield v. Chicago & St. P. R. Co.,* 114 U. S., 615; 5 Sup. Ct. 1125, 29 L. Ed. 224; *Continental Imp. Co. v. Stead,* 95 U. S., 161, 24 L. Ed. 403; *Elliott v. Chiago, M. & St. P. Ry. Co.,* 150 U. S., 245, 14 Sup. C,. 85, 37 L. Ed. 1068.

In *Brommer v. Railroad Co.*, 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, plaintiff was injured in a crossing collision; it appeared that he was unfamiliar with the crossing; that for 170 feet along the highway the view of the track on both sides was totally obstructed, until a point 30 or 40 feet from the rails was reached, from which a train approaching could have been seen for 500 or 600 feet. The Court held that the lower Court properly directed a verdict for the defendant, saying:

"His failure to stop, look, and listen, at a point where stopping and looking and where listening would have prevented the accident, directly contributed thereto."

In *Davis v. Chicago, Rhode Island & P. Ry. Co.*, 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424, Davis was riding in a buggy, two-seated, with his friend Pfeutze, visiting a point of mutual interest. Pfeutze, the owner of the rig, was driving, Davis sitting by him on the front seat. They approached a railroad crossing. The view of an approaching train was obstructed until they reached a point 34 feet from the rails, from which it could be seen at a distance of about 90 feet. At 15 feet it could be seen 232 feet. They trotted the horse until they got within 20 or 25 feet of the track, and then slowed down to a walk. They were both familiar with the crossing, and testified that they looked and listened for a train, and, neither seeing nor hearing one, they drove onto the track without stopping. Just as the horse's fore feet reached the rail the plaintiff saw the train coming. The driver whipped the horse and cleared the track. The plaintiff, taking fright, jumped, and was injured. The Court in a very elaborate opinion held that the conduct of the occupants of the buggy was careless to a degree of "recklessness," and denied the plaintiff's right to recover.

In *Railroad Co. v. Houston*, 95 U. S. 697, 24 L. Ed 542, the Court says:

"But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses she could not have failed to both hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

In *Northern P. R. Co. v. Freeman*, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014, Freeman was driving a pair of horses in a farm wagon along a highway which approached a crossing through a deep cut, the sides of which obscured the view of an approaching train until a point 40 feet from the track was reached. He did not stop. After passing the 40-foot point he was seen looking at his horses, and not toward the track along which the train was approaching. When he noticed the train on him it was too late; he was struck and killed. The Supreme Court held that the testimony tending to show his contributory negligence was "conclusive," and that the defendant was entitled to a directed verdict. The Court says:

"The duty of a person approaching a railroad crossing whether driving or on foot, to look and listen before crossing the track, is so elementary, and has been affirmed so many times by this Court, that a mere reference to the

cases of *Railroad Co. v. Houston,* 95 U. S. 697, and *Scho-field v. Chicago & St. Paul Railway Co.,* 114 U. S. 615, is a sufficient illustration of the general rule."

Again:

"Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred. He did not look; or, if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence."

In *Erie R. Co. v. Weinstein,* 166 Fed. 271, 92 C. C. A. 189, it is said:

"If the undisputed physical facts made it so clear as to warrant no other inference than that the deceased by the use of his senses could have seen the approach of this train, if he had looked before reaching the crossing, in time to have kept off and permitted it to pass, or that he saw the train and endeavored to cross in front of it, the Court would have erred in denying the motion for a peremptory instruction."

In *St. Louis & S. F. Ry. Co. v. Cundieff,* 171 Fed. 319, 96 C. C. A. 211, the syllabus reads:

"Plaintiff, while walking across a railroad track at a crossing on a dark and foggy evening, was struck and injured by a freight train which backed against him and was moving at a speed of not more than five or six miles an hour. He was a railroad man and was familiar with the crossing. Witnesses introduced by him testified that they saw the train at a distance of not less than 30 feet, and there was no obstruction to prevent plaintiff from hearing or seeing it if he had stopped and looked and listened before stepping on the track. Held, that he was chargeable with contributory negligence as matter of law, which precluded his recovery; that, in view of the other testimony and of the physical facts, his own testimony that he did so stop

and look and listen was not entitled to credence, and did not create a conflict of evidence."

In *Chicago, M. & St. P. R. Co. v. Bennett*, 181 Fed. 799, 104 C. C. A. 309, the syllabus is as follows:

"The negligence of the servants of railroad companies in failing to sound whistles or ring bells on the approach of their trains to crossings constitutes no excuse for the failure of travelers on the highways to discharge their duty to exercise reasonable care to look and listen effectively to avoid collisions before they enter upon railroad tracks."

And:

"Where a plaintiff upon a highway, approaching a railroad crossing, cannot look or listen effectively without stopping, it is his duty to stop and look and listen before entering upon the railroad, and a failure so to do is fatal to his recovery, if such failure contributes to his injury."

"If his view is obstructed, then he must listen more attentively and carefully. If his eyes are useless, and there is any noise or confusion which he controls, such as that of horses' feet, or the rumbling of a wagon, or the grinding of brakes, which interfere with the accuteness of his hearing, it is his duty to stop such noise or interfering obstruction and listen for the train before going upon the track."

This rule has been adopted by the Circuit Court of Appeals of this circuit in the very recent case of *Dernberger v. Railroad Co.*, 234 Fed. 405 (District Court, Judge Dayton), and 243 Fed. 21, 155 C. C. A. 551 (C. C. A., Judge Pritchard).

The opinion of Judge Simonton (C. C. A.) in the case of *Neininger v. Cowan*, 101 Fed. 787, 42 C. C. A. 20, is an exceedingly clear statement of the doctrine. See, also, *Curtis v. Railroad Co.*, 232 Fed. 109, 146 C. C. A. 301. The rule is the same in South Carolina. *Cable Piano Co. v. Railroad Co.*, 94 S. C. 145, 77 S. E. 868; *Bamberg v.*

*Railroad Co.,* 72 S. C. 389, 51 S. E. 988; *Osteen v. Railroad Co.,* 76 S. C. 368, 57 S. E. 196.

In the Cable Piano case, *supra,* the facts were these:

A negro boy was driving plaintiff's team, drawing a covered piano wagon along a highway which ran close to and parallel with the railroad for three-quarters of a mile, and then turned abruptly across the track, the distance from the turn in the highway to the crossing being from 20 to 30 feet. He testified that, on account of the cover of the wagon, he could not see the train, which was approaching from his rear, without leaning out of the wagon, and that he could not hear it because of the noise made by the wagon. The track was straight, and the view unobstructed for at least three-quarters of a mile in both directions. The Court held as follows:

"It necessarily follows that, if the driver had looked before going upon the crossing, he would have seen the train in time to prevent the collision. The law imposes upon every capable person the duty of observing due care for his own safety, when about to cross a railroad track, which necessarily involves the exercise of his senses. And, while it is ordinarily a question of fact for the jury to say whether, under the circumstances of the particular case, the traveler did exercise such care, when the facts are undisputed and susceptible of only one inference, it becomes a question of law for the Court. *Zeigler v. Railroad Co.,* 5 S. C., 221; *Edwards v. Railway,* 63 S. C., 271, 41 S. E. 458; *Bamberg v. Railway,* 72 S. C., 389, 51 S. E., 988; *Osteen v. Railway,* 76 S. C., 378, 57 S. E., 196; *Drawdy v. Railway,* 78 S. C., 379; 58 S. E., 980; *Griskell v. Railway,* 81 S. C., 193; 62 S. E., 205. In this case plaintiff's driver did not observe the slightest care for his own safety, or that of the property in his custody, and the failure to observe such a slight precaution as to look for approaching trains,

before driving upon the crossing, was gross negligence. The evidence warrants no other inference than that his failure to look was the sole cause of the accident, or at least a proximate contributing cause. Therefore defendant's motion to direct the verdict should have been granted."

There is no testimony in the case as to the speed of the engine except from the defendant's witnesses, and that was to the effect that it was 18 or 20 miles an hour. From the testimony of the plaintiff's witnesses the speed of the automobile could have been little, if any, less than that. Consequently when the engine emerged from the cut, 200 feet from the crossing, the automobile, moving at practically the same speed, was 200 feet from the crossing, at a point from which the engine was plainly visible. The driver of the car testified that he looked to the right all the way from the crossroads to the crossing, but he did not see the engine. In view of the physical impossibility of this statement being true, it should be rejected. The great probability is that the presence of his father with another colored man in his lap, sitting on the right of the driver, prevented him from seeing the engine.

It appearing to me that the occupants of the car not only did not exercise slight care, but did not exercise any care at all, the verdict should have been directed in favor of the defendant upon the ground of gross contributory negligence.

I think, too, that the Circuit Judge was in error in charging the jury that a failure to give the statutory signals is some evidence of willfulness and wantonness. The charge instructs the jury what force and effect to give to certain testimony. The failure to give the signals may support an inference by the jury that there was willfulness or wantonness, but it does not in all cases point to willfulness or wantonness. It may be inadvertent, or it may be

from a conscious failure to observe due care, and therefore willful. In all cases it is a question of fact to be decided by the jury, and the instruction by the Court that such failure was evidence of willfulness was a practical instruction that they should infer willfulness from the failure. There was no testimony in the case tending to show why the signals were not given. All of the testimony was directed to the fact of whether or not the signals were given. Therefore, when the Court told the jury that the bare failure was evidence of willfulness, it was tantamount to telling them that, if they found a failure to give the signals, they must also find that the defendant was willful rather than negligent.

In the cases of *Woodward v. Railway*, 90 S. C., 266, 73 S. E. 79; *Sanders v. Railway*, 93 S. C., 543; 77 S. E., 289; *Kirkland v. Railway*, 97 S. C., 72; 81 S. E., 306; *Folk v. Railway*, 99 S. C., 284; 83 S. E., 452; *Ritter v. Railway*, 101 S. C., 8; 85 S. E., 51. *Callison v. Railway*, 106 S. C., 123; 90 S. E., 260, it is generally held that the inference of willfulness may be drawn by the jury from a failure to give the statutory signals; but none of these cases go further than that. In the Callison case the question is discussed more elaborately, probably, than in any of the other cases. We quote at length from that case:

"The failure of a railroad company to give the signals required by statute at a public crossing is negligence per se; moreover, it is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt in some instances, it may be the result of mere inadvertence; if so, it would be negligence only; but when the positive command or prohibition of a statute is violated or disobeyed, it is deemed sufficient to require submission to the jury of the question whether, under all the circumstances, it was the result of mere inadvertence, or of indifference

to the rights of those who travel the highways, or a conscious failure to be careful for their safety. The reason upon which the rule is based is that, when anything is commanded or prohibited by legislative authority, every one is conclusively presumed to know it, and is bound to act accordingly, and, the matter having been brought to his attention in such a solemn and impressive way, his violation or disobedience cannot be entirely excused, and therefore it amounts at the least to negligence; and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious diregard thereof, and of the rights of those intended to be safeguarded thereby. True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, unless the evidence is susceptible of but one inference."

It is clear from this that the Court has the right to submit testimony of the failure to give statutory signals on the issue of willfulness and wantonness, and the jury is at liberty, if they so desire, to draw an inference of willfulness and wantonness, or may simply draw an inference of negligence. In the present case, the presiding Judge told the jury that the failure was in itself evidence of willfulness, and, there being no evidence as to why or how the failure to give the signals was caused, the jury may have concluded under the charge that such failure was willful.

The only case which tends to support the charge of the Judge is that of *Keels v. Railway,* 108 S. C. 393; 95 S. E., 65. There the Court uses this language: "It is evidence of willfulness, wantonness, and recklessness, but it is for the jury to say"—clearly following the doctrine laid down in *Callison v. Railway.* The Supreme Court or the Judge, on a motion for a nonsuit or for the direction of a verdict, has the right, of course, to say that there is evidence as to

any issue made by the pleadings. This is very different, however, from the right to charge the jury that there is evidence of a fact in issue. The Constitution requires the Judge simply to charge the law applicable to the issue, and forbids his stating whether or not there is evidence to support such issue. So it is for the jury to draw the inference from the evidence, without intimation from the Court, as to what inference they should draw. Therefore, when the Court told the jury in this case that the failure to give the signals was evidence of willfulness, it practically instructed the jury to draw an inference of willfulness from such failure.

In the case of *Finch v. Railway,* 87 S. C., 193; 69 S. E., 209, the Court charged the jury that negligence could not be inferred from the simple happening of an accident; but, if the railroad should know the circumstances and fail to explain how the accident happened, the jury might infer negligence from their failure or refusal to explain how it occurred.

The Supreme Court, in discussing this, say in substance that it is the duty of the Court to define negligence and state the principles of law applicable thereto. It cannot, however, indicate any particular fact, and instruct the jury that from that fact an inference of negligence may be drawn.

"The Constitution does not allow the presiding Judge to state the evidence; much less does it allow him to single out any particular act or omission of the defendant and instruct the jury that if that appears then they may infer that the defendant was negligent."

In the present case, the Circuit Judge violated this principle. He singled out the issue of failure to give the statutory signals, and told the jury that such failure was evidence of willfulness, and thereby invaded the province of the jury. The jury alone had the power to determine

whether the failure to give the statutory signals evidenced willfulness or evidenced neglect.

The case of *Lawson v. Railway,* 91 S. C., 216, is to the same effect.

In the case of *Brown v. Railway,* 83 S. C., 56, 64 S. E., 1012, the presiding Judge charged the jury that plaintiff's admissions are received in evidence only as discrediting his testimony, and not as affirmative proof of material facts in issue. On its face this appears to be an abstract statement of the law as to evidence; but, upon further examination, it is clear that it is a direction as to the weight and sufficiency of evidence, and the Supreme Court held that it was a violation of the mandate of the Constitution. In the present case, when the presiding Judge told the jury that failure to give the statutory signals was evidence of willfulness, he told them what force and effect and weight they might attach to such failure.

In *Turbyfill v. Railway,* 83 S. C., 328, 65 S. E., 278, the Court again announced the same doctrine, to wit: It is the duty of the Court to define negligence, but it is the province of the jury to draw the inference from the facts.

It is stated in the leading opinion and in respondent's argument that the verdict was for $5,000 actual damages. If this be true, the charge of the Judge may possibly have been harmless; but I find in the record nothing to substantiate this statement. The verdict was a general one, and there is no way of telling whether it included punitive damages or not and, even if it did not, the jury may have found that the tort was willful, and therefore not to be defended by the contributory negligence of the plaintiff, though they were not disposed to inflict punitive damages.