## 9548

### CALLISON v. CHARLESTON & W. C. RY. CO.

#### (90 S. E. 260.)

1. TRIAL—DIRECTED VERDICT—RIGHT TO DIRECT VERDICT.—A verdict for defendant should not be directed where there is evidence sufficient to warrant a reasonable man in finding for plaintiff.

2. APPEAL AND ERROR—REVIEW—PRESUMPTIONS.—Where the evidence warrants a particular finding, and such finding is necessary to support a general verdict, it wil be presumed to have been made; therefore, where the evidence warranted such finding and it was necessary to support the general verdict for plaintiff, it will be presumed the jury found defendant guilty of wilful and wanton negligence.

3. RAILROADS—OPERATION—SIGNALS.—The failure of a railroad company to give the signals required by statute at a public crossing is negligence *per se.*

4. RAILROADS—CROSSING ACCIDENTS—WILFUL AND WANTON NEGLIGENCE.—The failure of a railroad company to give the required statutory signals at a public crossing warrants an inference of wilful and wanton negligence, requiring the submission of that question to the jury.

5. RAILROADS—INJURIES AT CROSSING—JURY QUESTION—CREDIBILITY OF WITNESSES.—Though the railroad company's servants positively testified the bell was rung for the crossing, testimony by plaintiff that his hearing was good and that he did not hear the bell, raises a question for the jury; the credibility of witnesses being for the jury.

6. RAILROADS — CROSSING ACCIDENTS — DEFENSES — CONTRIBUTORY NEGLIGENCE.—Where the defendant railroad company was guilty of recklessness and wantonness in failing to give statutory crossing signals, the contributory negligence of plaintiff, who was run down by the company's train, is no defense.

7. RAILROADS — OPERATION — CROSSINGS — FLAGMAN.—In the absence of statute or ordinance requiring a particular crossing to be flagged, negligence cannot be predicated upon the failure to do so, unless a flagman was required in the ordinarily prudent operation of the railroad.

8. RAILROADS—OPERATION—FLAGMAN.—In a crossing accident case, the question whether a railroad company was guilty of negligence in failing to maintain a flagman at the crossing, in view of obstruction of the vision of trainmen and travelers by reason of rain and storm, *held,* under the evidence, for the jury.

9. NEW TRIAL—MOTION—AFFIDAVITS.—At the hearing on a motion for new trial on the minutes, affidavits on which defendant asked for a new trial for after discovered evidence cannot be considered where

not served on plaintiff to whom no notice of motion for new trial on that ground was given.

Before HON. C. J. RAMAGE, special Judge, Greenwood, October, 1915. Affirmed.

Action by·James W. Callison against Charleston & Western Carolina·Railway Company. From a judgment for plaintiff, defendant appeals.

*Messrs. J. B. Park, W. H. Nicholson* and *F. B. Grier,* for appellants, submit: I. *The plaintiff must not only show negligence or wilfulness by the defendant, but also that the injury complained of was the result of such negligence or wilfulness:* 63 S. C. 271; 21 S. C. 466; 78 S. C. 193; 90 S. C. 42; 81 S. C. 193; 81 S. C. 100; 33 S. C. 198. II. *The law imposes upon every capable person the duty of observing due care for his own safety when about to cross a railroad track which necessarily involves the exercise of his senses:* 94 S. C. 145; 72 S. C. 389; 76 S. C. 368. III. *It is not enough for plaintiff to testify that he did not see and did not hear an approaching train before undertaking to cross a railroad track at a public street crossing. The law imposes on him the positive duty of.exercising due care and making proper use of his senses of sight and hearing, and where it appears from the undisputed testimony that by the exercise of ordinary care in looking and listening he could have avoided a collision at the crossing, it is the duty of the Court to direct a verdict in favor of the defendant:* 94 S. C. 145; 72 S. C. 389; 76 S. C. 368; 78 S. C. 379; 81 S. C. 193; 144 U. S. 408; 113 U. S. 615; 95 U. S. 161; 97 U. S. 697; 150 U. S. 245. IV. *An inference of wilfulness cannot properly be drawn for the mere fail-*

FOOTNOTE.—As to the care required of a driver of an automobile at a railroad crossing, see notes in 46 L. R. A. (N. S.) 702 to 707, A. & E. Ann. Cas. 1913b, 680, A. & E. Ann. Cas. 1915b, 767.

*ure to hear the ringing of the bell by a party crossing the railroad track where the admitted facts and circumstances are entirely consistent with the positive testimony that the bell was ringing:* 81 S. C. 24; 101 S. C. 8; 90 S. C. 266; 78 S. C. 556; 93 S. C. 543; 99 S. C. 284; Wigmore on Ev., secs. 664 and 659; 82 S. C. 321; 52 S. C. 325; 101 S. C. 159; 85 S. C. 26; 58 S. C. 70; 61 S. C. 170; 69 S. C. 445; 62 S. C. 252; 75 S. C. 136. V. *Unless required by a statute a railroad is under no duty to maintain a flagman at an ordinary crossing and negligence cannot be charged upon a mere failure so to do, particularly as to one familiar with the crossing:* Cyc., vol. XXXIII, pages 934, 945, 946; 3 Elliott, Railroads, sec. 1156; 92 N. Y. 219; 44 Am. Rep. 370; 36 L. Ed. U. S. 490; 100 Am. Dec. 412. VI. *Before a jury is warranted in saying in the absence of a statutory or municipal direction to that effect that a railroad should keep a flagman at a certain crossing it must first be shown that such crossing is more than ordinarily dangerous:* Cyc., vol. XXXIII, page 945; (144 U. S.) 36 L. Ed. 490; 3 Elliott on Railroads 1157; 44 Amer. Rep. 370. VII. *The driver of an automobile approaching a railway crossing should stop his machine before undertaking to cross, and if the view is obstructed the driver of the machine should stop, look and listen before going on the track, and his failure so to do is such negligence on his part as will defeat a recovery:* 21 L. R. A. (N. S.) 794; Ann. Cases 1913b, 697, and notes on page 681. VIII. *The Court will take judicial notice of unquestioned laws of nature and established prinnciples of science and where the testimony is opposed to well established and unquestioned laws of nature and scientific facts will disregard the testimony:* 28 L. R. A. (N. S.) 648, 650; 152 Ind. 607; 46 L. R. A. 33; 53 N. E. 415; Elliott on Evidence, paragraph 39.

*Messrs. Featherstone & McGhee* and *Tillman & Mays,* for respondent, cite : *As to wilfulness:* 91 S. C. 546. *As to charge with reference to flagman:* 33 Cyc. 1102; 104 U. S. (36 L. Ed. 485) ; 100 Am. Dec. 413; 3 Elliott, Railroads, sec. 1157; 37 Am. Rep. 444; 57 Am. St. Rep. 772; 8 A. & E. Enc. of L. 417 and 418; 72 S. C. 389; 65 S. C. 214; 10 Rich. 227; 57 S. C. 205; 52 S. C. 323; 58 S. C. 70; 47 S. C. 28; 59 S. C. 434. *As to motion for new trial:* 14 S. C. 428 and 517; 33 S. C. 401.

October 20, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from judgment for plaintiff for $1,000 damages to his person and automobile caused by collision with defendant's locomotive on a street crossing.

The Southern Railway runs through Main street in the town of Greenwood, practically dividing it into two streets, one on either side of the railroad. Defendant's road runs parallel with the Southern for some distance south of the business center of the town, and then curves to the right, going in a southwesterly course, and crosses the south side of Main street on a long curve, and at a very oblique angle with the street. About the middle of the street, a spur track branches off to the left going to a turntable. There is a great deal of travel over this crossing, especially in automobiles. Under ordinary conditions, one approaching it from the south, as plaintiff did, has an unobstructed view of it, and of the track approaching it from the north, as the engine did; but, at the time of the collision, it was raining very hard, and the plaintiff's wind shield was up, so that his view of the crossing and track approaching it was obscured by the rain and water on his wind shield.

For the same reason the view of those on the engine was obscured.

Plaintiff testified that on . September 24, 1914, he was driving up the south side of Main street, going into Greenwood, at a moderate gait, and, when he approached this crossing, he threw off the power of his engine, slowed down and looked to see if the crossing was clear. Seeing that it was he proceeded across, and, to cross the tracks at right angles, he steered his car to the left and crossed the spur track, and just as the front wheels of his car got on the main line, he saw the engine coming upon him, and, before he could get off the track, it struck the front part of his car, and the impact threw him against the back of the seat. That, at the time, he did not think he had sustained any personal injury, and so told the engineer and fireman, who came to his assistance, after they had stopped the engine; but afterwards his back began to hurt him and continued to hurt him, and after a month or so he consulted his physician, but his back continued to hurt him up to the time of the trial. He said he was alert on the occasion, but heard no signal of the approaching engine—no sound of bell or whistle, nor noise of the moving engine and train of freight cars which it was drawing. The engine was not going very fast, and he thought it must have been coasting downgrade to have been moving so noiselessly. There was nothing to prevent his hearing the noise of the train, except the noise made by his own engine and car, the rain, and the running of the machinery of a near-by oil mill.

The engineer testified that the train was moving about three or four miles an hour. The fireman was looking ahead and ringing the bell. He, too, was looking ahead, and could see the track the distance of five or six car lengths ahead, except the track immediately in front of the engine, the view of which was cut off by the pump on the engine, and, at the rate the train was moving, he could have stopped within the distance of a car length. He was on the right-

hand side of the cab, and did not see plaintiff's automobile. which approached from the other side, until after he had struck it. The fireman ran to his side and said, "You hit an automobile," and he stopped and asked plaintiff what the trouble was, and he replied, "I just didn't see you; I don't blame anybody at all." The curtains of the automobile were up.

The fireman testified that he was ringing the bell and looking ahead, but the rain and water on the glass of the cab window and curvature of the track prevented him from seeing very far—not more than half a car length—ahead of the engine, and he did not see plaintiff's automobile until the engine was about to strike it; heard plaintiff tell the engineer that he did not blame anyone for the accident; that his curtains and wind shield were up, and it was raining, and he couldn't see them; he was sure the curtains were up, and he was ringing the bell.

Two other witnesses, employees of defendant, testified that the plaintiff told them, a short time after the accident, on the same day, that he did not blame anybody for it; that it was raining, and he had his wind shield and curtains up, and did not see the train until he was on the track. Plaintiff denied this, and denied telling the engineer so, and denied, also, that his curtains were up.

The jury viewed the scene of the accident, and, at request of defendant's attorneys, plaintiff got into an automobile and demonstrated, in presence of the jury, how he was driving at the time of the collision.

The first assignment of error is in the refusal of defendant's motion for a directed verdict. Was the evidence sufficient to warrant a reasonable jury in finding a verdict for plaintiff? This Court has, time and again, laid down that as the test of the evidence or standard by which it must be considered in deciding motions for a nonsuit or directed verdict. This standard requires that verdicts must be supported by material evidence and be

founded upon reason, and not upon surmise, conjecture or caprice.

We consider, first, whether there was evidence which warranted a reasonable finding that defendant was guilty of recklessness, wilfulness or wantonness, because, if there was such evidence, we must conclude that the jury so found, if that conclusion be necessary to support a general verdict for plaintiff.

The failure of a railroad company to give the signals required by statute at a public crossing is negligennce *per se;* moreover, it is sufficient to warrant a reasonable inference of recklessness, wilfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt, in some instances, it may be the result of mere inadvertence; if so, it would be negligence only; but, when the positive command or prohibition of a statute is violated or disobeyed, it is deemed sufficient to require submission to the jury of the question whether, under all the circumstances, it was the result of mere inadvertence, or of indifference to the rights of those who travel the highways, or a conscious failure to be careful for their safety. The reason upon which the rule is based is that, when anything is commanded or prohibited by legislative authority, every one is conclusively presumed to know it and is bound to act accordingly, and, the matter having been brought to his attention in such a solemn and impressive way, his violation or disobedience cannot be entirely excused, and therefore it amounts at the least, to negligence; and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious disregard thereof, and of the rights of those intended to be safeguarded thereby. True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, unless the evidence is susceptible of but one inference.

Defendant's contention, however, is that the evidence does not warrant a reasonable finding that the bell was not rung, because two of defendant's witnesses, the fireman and engineer, testify positively that it was, while plaintiff's testimony is of a negative character—merely that he did not hear it.    Clearly that contention relates only to the weight or probative value of the testimony, which it is the exclusive province of the jury to consider, at least in the first instance; that finding being subject to correction and control on motion for new trial.

All Courts recognize the difference in probative value of positive and negative testimony; and that, ordinarily, positive testimony carries the greater weight.    Nevertheless, it is conceivable that negative testimony may outweigh that of a positive nature, and numerous cases might be instanced in which it would point more satisfactorily and certainly to the truth.    The comparative value of the two kinds of evidence depends upon a variety of circumstances, such as the credibility of the witnesses, their motives and interests, their facilities and opportunities for seeing and hearing, and other conditions and circumstances that might require consideration.

Now, in this case, plaintiff testified positively, on direct examination, that no bell was rung; but, under the cross-examination of defendant's attorney, he modified that statement by saying that what he meant was that he did not hear the bell, and, so far as he was concerned, no bell was rung. He said, also, that his hearing was good, and that he was "on the alert;" that is, sensible of danger and on the lookout for it.    Under all the circumstances, it was not unreasonable for the jury to find that, if the bell was ringing, plaintiff would have heard it; and, if they believed that he did not hear it, they must have found that it was not ringing.    The credibility of witnesses is for the jury.

As there was sufficient testimony to carry the issue of recklessness and wantonness to the jury, and as there was no special finding on that issue, the defense of contributory negligence is eliminated from the case under the well-settled rule that contributory negligence is no defense to a reckless or wanton injury.

The next question is: Did the Court err in submitting to the jury the question whether defendant was guilty of negligence in failing to flag the crossing? that being one of the specifications of negligence alleged in the complaint. The Court instructed the jury that there is no statute or ordinance which requires defendant to flag this crossing, but refused to instruct them, as requested by defendant, that they could not find defendant guilty of negligence for failing to do so, but instructed them that it was for them to say whether or not, under the circumstances of this case, in the exercise of due care, defendant should have flagged it.

The authorities cited by appellant sustain the instruction given. No one would contend that a railroad company is required to flag every highway crossing, without regard to its location and the circumstances and the degree of danger attendant upon its use by the traveling public. Therefore, in the absence of a statute or ordinance requiring a particular crossing to be flagged, negligence cannot be predicated upon the failure to do so, unless the evidence shows that ordinary prudence requires it, for that is the degree of care which the law imposes upon such companies in the movement of trains. And there can be no doubt that ordinary prudence might require a particular crossing to be flagged at certain times, or at one time, on account of circumstances of extraordinary danger, when that degree of care would not be required at all times. Suppose, for instance, a train should approach a crossing constantly used by a great many people, when the atmosphere is so dense with dust or smoke that its approach could not be seen, and those using the

crossing could not tell upon which track it is coming, would not ordinary prudence suggest that a flag be sent ahead? The degree of care should be commensurate with the danger.

The question here is not whether this crossing should have been flagged at all, but only on the occasion in question. The evidence is that, under ordinary circumstances, those using it had an open and unobstructed view of it and of the tracks approaching it, and, therefore, under normal conditions, flagging may not have been necessary for safety. But, on the occasion in question, the train was going upon a double-tracked crossing, which was frequented by people traveling in automobiles. It was going forward during a rainstorm which obscured the vision of the trainmen through the glass of the cab windows as well as that of the man in the automobile through his wind shield, and, possibly, also interfered with each hearing the approach of the other. Besides, the train was going downgrade and making very little noise, and that was obscured to some extent by the noise of the machinery running in a near-by oil mill, and the track over the crossing had such curvature that the fireman could see but a few feet ahead of the engine. These facts and circumstances were sufficient to warrant the Court in submitting the issue to the jury.

The facts and circumstances distinguish this case from that of the *Cable Piano Co.* v. *Railway*, 94 S. C. 145, 77 S. E. 868, upon which appellant relies. In that case there was but one track, and the driver of the vehicle had an unobstructed view of it for three-quarters of a mile in both directions from the crossing; and it was clear beyond dispute that his failure to look, before going upon the crossing, was the cause of the collision; but, in this case, the rainstorm Court to consider certain affidavits presented by defendant obstructed plaintiff's view, as it did that of the fireman.

The only other assignment of error is the refusal of the

at the hearing of the motion for a new trial on the minutes.
Upon these affidavits, defendant asked for a new trial for after-discovered evidence. The affidavits were not served on plaintiff, and no notice of the motion for a new trial on that ground was given him. Clearly, the ruling was right. ᾿ Notice of the motion should have been given and the affidavits should have been served with the notice, or at least in time to give plaintiff an opportunity to rebut them and prepare for the hearing.

Judgment affirmed.