11590

R. J. REYNOLDS TOBACCO CO. v. ATLANTIC COAST LINE RY. CO.

(126 S. E., 449)

1. RAILROADS—NEGLIGENCE AT CROSSING HELD FOR JURY.—In action for destruction of automobile struck by train at crossing, in which it was claimed that railroad was negligent in failing to provide gates or watchman at crossing, in failing to give signals on train's approach to crossing, in operating train at a dangerous rate of speed, and in placing car on track at crossing so as to obstruct automobile driver's view of on-coming train, evidence *held* sufficient for submission of railroad's negligence to jury.

2. RAILROADS—CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE DRIVER AT CROSSING HELD FOR JURY.—In action against railroad for destruction of automobile struck by train at crossing, whether automobile

driver was negligent in attempting to cross tracks with obstructed view of on-coming train, without stopping to ascertain if train was approaching, *held* for jury.

3. RAILROADS—INSTRUCTIONS AS TO DUTY TO STOP, LOOK, AND LISTEN HELD PROPER.—In action against railroad for destruction of automobile struck by train at crossing, instructions as to duty to stop, look, and listen *held* proper and sufficient.

4. RAILROADS—CARE REQUIRED OF AUTOMOBILE DRIVER WITH OBSTRUCTED VIEW DEPENDS ON CIRCUMSTANCES.—Where automobile driver's view of track is obstructed by cars on side of track, question of whether driver is required to get out of car and go down track to look for on-coming train depends on the circumstances.

5. NEW TRIAL—NEW TRIAL DISCRETIONARY WITH JUDGE.—Motion for new trial is addressed to the sound discretion of the judge.

6. RAILROADS—ALLOWANCE OF PUNITIVE DAMAGES FOR DESTRUCTION OF AUTOMOBILE AT CROSSING HELD PROPER.—In action against railroad for destruction of automobile struck by train at crossing, facts *held* to warrant allowance of punitive damages.

7. RAILROADS—$1,200 PUNITIVE DAMAGES FOR DESTRUCTION OF AUTOMOBILE AT CROSSING HELD PROPER.—Allowance of $1,200 as punitive damages in action for destruction of automobile struck by train at crossing *held* proper.

8. DAMAGES—$500 DAMAGES FOR DESTRUCTION OF ONE YEAR OLD FORD ROADSTER HELD PROPER.—Five hundred dollars damages for destruction of Ford roadster, one year and three months old in 1920, immediately after it had been completely overhauled, *held* proper.

9. NEW TRIAL—GRANTING OF NEW TRIAL NISI INSTEAD OF SETTING ASIDE VERDICT HELD PROPER.—Where amount of punitive damages allowed was excessive, action of Court in granting an order for new trial *nisi*, instead of setting aside the verdict, *held* not error.

· Before RICE, J., Charleston, April, 1923.    Affirmed.

Action by the R. J. Reynolds Tobacco Company against the Atlantic Coast Line Railroad Company.    Judgment for plaintiff, and defendant appeals.

Plaintiff claimed that defendant was negligent in failing to protect the crossing by gates or flagman; in allowing a freight car on the track to obstruct the views of the on-coming train; in its failure to give a signal of approach of train; and in approaching the crossing at a high and dangerous rate of speed.    Defendant claimed that the driver of plaintiff's automobile was negligent in attempting to cross the

track without stopping to look and listen and to ascertain if a train was approaching.

The driver of the automobile testified for plaintiff that he was an employee of plaintiff company; that on his arrival at the crossing he slowed down, but proceeded to cross the track; that he could not see the approaching train because a freight car on the other track obstructed the view; that no bell was rung or whistle blown; that the traffic at the crossing was heavy, and that no gates or flagman were maintained there by the railroad.

Other witnesses for plaintiff testified as to the traffic over the crossing and the failure of the railroad to maintain gates or flagman.

The locomotive engineer, the conductor, the brakeman and the train master and other witnesses testified for defendant that the train would have passed the crossing at 6 or 8 miles an hour if it had not stopped; that the train was stopped within 75 feet after striking the automobile; that the bell was being rung and the whistles were being blown as the train was approaching the crossing; that there was no box car on the track at the crossing; that the automobile driver's view of the on-coming train was unobstructed, and that the driver of the automobile, with full view of the train, tried to pass in front of it.

There was testimony that the automobile had been completely overhauled just before the accident; that it was a year and three months old at time of accident; that the automobile was destroyed; and that a new car, at a cost of $745.00, was purchased immediately after the accident to replace it.

The exceptions follow:

As to refusal to direct verdict:

(1) His Honor erred in refusing to direct a verdict as to the cause of action for punitive damages, because the evidence is susceptible of but one inference, and the facts

and circumstances repel the inference of recklessness, willfulness, or wantonness, and there was nothing to carry the issue of punitive damages to the jury.

(2) As to the whole case, because there was no evidence sufficient to warrant a fair-minded jury in finding a verdict for the plaintiff and none sufficient to submit to the jury on the material allegations of the complaint.

(3) Because the evidence is the collision was due to the gross negligence of the plaintiff in attempting to cross the track in defiance of the warnings of the approach of the train, or else was due to such negligence in failing to look and listen and in failing to exercise ordinary care in making use of his senses.

(4) Because the evidence warrants no other inference than that the failure of the driver of the automobile to look and listen, if not the sale cause of the collision, was certainly such a proximate contributing cause as must in law defeat recovery.

As to the charge of the presiding Judge:

(5) We submit his Honor erred in refusing defendant's eighth request to charge, and by his refusal and comments thereon committed an error necessarily gravely prejudicial to defendant upon a pivotal question in the case. The eighth request was as follows: "There are some circumstances in which it is the duty of the traveler not only to look and listen, but also to stop, look, and listen. If, for example, the noise is so great that an approaching train cannot be heard, or the obstructions are such that it cannot be seen, it may be the duty of the traveler to stop, look, and listen. There is no doubt that, where it appears beyond controversy that a failure to stop, look, and listen under such circumstances is a proximate cause of the collision, there can be no recovery."

We submit this was correct law and applicable to the case, and should have been charged. The Circuit Judge not only refused this request, but added: "I won't charge you

that in this case. There might be conditions and circumstances under which a man of ordinary caution and prudence would stop, look, and listen, it all depends on the degree of danger; if it was a dangerous situation, then it would require a greater degree of care, and that degree of care may have required a man of ordinary prudence to get out of his automobile and go down the track to see if any train was coming or not, etc."

The error is:

(a) By refusing this request and assigning as his reason for refusal that, "I won't charge you that in this case. There might be conditions and circumstances under which a man of ordinary caution and prudence would stop, look, and listen, etc.," the Circuit Judge virtually took away from the jury and decided a crucial issue of fact in the case, viz.: He, in effect, decided that in this case it was not necessary for the driver of the automobile to stop, as well as to look and listen, if the circumstances required it.

(b) To tell the jury, "I will not charge you that," when it appears beyond controversy that a failure to stop, look, and listen under circumstances requiring it will defeat recovery, and at the same time say, "I won't charge you that in this case," and then adding, "There might be conditions and circumstances, etc.," was, we submit, equivalent to saying to the jury: The conditions and circumstances in this case were such that the driver of the automobile was not required to stop as well as to look and listen, which was tantamount, we submit, to deciding a pivotal question of fact for the jury under the pleadings and testimony in the case.

(c) Because in so refusing the eighth request of defendant and in so commenting upon the same the Circuit Judge charged upon the facts of the case.

(d) Because in a road crossing case it is, we submit, correct to charge the jury that, if they believe beyond controversy that the circumstances of an obstructed view re-

quired the plaintiff in the exercise of ordinary care to stop, look, and listen, and a failure to do so was the proximate couse of the injury, there can be no recovery, and his Honor erred in refusing to so charge, and in virtually adding that no such circumstances existed and no such duty was imposed in this case, when the pleadings and testimony made this fact a vital issue in the case.

(6) His Honor erred, it is submitted, in his comments upon the seventh request, and modification of same, in connection with his refusal of the eighth request, and comments thereon. The seventh request was: "(7) There is no law requiring a railroad company at all times to keep its tracks at a crossing free from cars obstructing the view, and I charge you that even if you believe a traveler's view at a crossing is obstructed by cars upon a side track, that will not relieve such traveler from the exercise of due care, and if you believe such traveler had full opportunity of knowing, of the approach of the train by the exercise of his senses, notwithstanding the presence of such obstruction, his failure to make use of his senses under such circumtances would be gross contributory negligence, if it was a proximate cause of the collision."

Upon which the Court said: "I charge you that. That don't mean that a man would have to get out of his car and go down the track 100 yards and look; all that would have to be determined by the circumstances in the case." It is submitted the request stated a correct principle of law and should have been charged without modification, and the Court erred, we submit, because:

(a) There was nothing in the language of the request requiring the explanatory modification of the same given by the Court, the effect of which was, we submit, to effectually neutralize and destroy a correct request by attributing an exaggerated construction of the same not covered by its language.

(b) Because it was for the jury and not the Court to say whether the circumstances required "a man to get out of his car and go down the track 100 yards and look."

(c) Because the law is, we submit, that the obstruction of the view does not relieve the traveler from the exercise of due care in looking from a position from which he can see.

(d) Because this modification was accentuated when the Court refused defendant's eighth request, and said: "I won't charge you that in this case. There might be conditions and circumstances under which a man of ordinary caution and prudence would stop, look, and listen; * * * if it was a dangerous situation * * * get out his car and go down the track to see if any train was coming," etc. Whereby the Court, we submit, practically told the jury that in this case the situation was not dangerous and did not require the driver to get out of his car and look, even though his view was obstructed.

(7) The Court erred, we submit, in refusing defendant's tenth request, which was as follows: "(10) In looking and listening, it is the duty of the traveler to select a position from which an effective observation can be made; if by a change of position upon the highway he can secure a view of the track, it is his duty to select such position."

In refusing this request the Court said: "I am not going to charge you that. What I have already said to you covers that; where a man must get in the road. or where he must not get is something I have nothing to do with; I think what I have said covers this whole thing."

Now, we submit, the request was correct, and should have been charged, and in refusing the same the Court erred.

(a) Because it is the duty of the traveler to select a position from which an effectual observation can be made, and the Court should so charge, and should not dismiss such request by saying, "Where a man must get in the road or

where he must not get is something I have nothing to do
with."

(b) Because the Circuit Judge, in his refusal of defend-
ant's eighth request and comments thereon, having virtually,
we submit, told the jury that in this case it was not neces-
sary to stop and look and listen, by his further refusal of
this tenth request, and saying, "I think what I have said to
you covers this whole thing," fastened and confirmed his
error.

(c) Because the principle stated in the tenth request is
not covered elsewhere in the charge, but the reverse was, we
submit, practically charged as applicable to this case.

(8) His Honor erred, we submit, in refusing defendant's
thirteenth request, which was as follows: "(13) I charge
you that, if you believe a traveler has a full opportunity of
seeing the approach of the train in time to avoid the collision,
and does not look, but goes upon a crossing directly in front
of an approaching train, then that is such gross contribu-
tory negligence as will defeat his recovery, even though the
statutory signals were not given."

And by adding: "I won't charge you that. All that might
depend on circumstances; his attention might be attracted
by something else; he might go on the track in front of an
approaching train when his attention is attracted by some-
thing else and drawn away from the danger."

We submit this request stated a correct principle of law
applicable to the case, and its refusal was erroneous:

(a) Because it is the duty of the traveler approaching
a crossing with full opportunity of seeing the approach of
the train to look, and, if he does not look, he is guilty of con-
tributory negligence.

(b) Because the duty of the traveler at a crossing to look
cannot be made to depend upon or be excused by saying "his
attention was attracted by something else." We submit
that in every road-crossing accident which has been caused
by a failure to look it is doubtless true that the attention of

the driver was "attracted by something else," and it is precisely such negligent inattention which the law forbids.

(9) On the refusal of the motion for new trial.

It is submitted it was error to refuse the motion for new trial:

(a) Because the verdict was contrary to the law and the evidence.

(b) Because there was no foundation in testimony for punitive damages.

(c) Because the verdict clearly indicated passion, caprice, or prejudice, and should have been set aside.

(d) Because his Honor erred in making his order for a new trial *nisi,* instead of setting aside the verdict. '

*Messrs. Fitzsimmons & Fitzsimmons,* for appellant, cite: *Directed verdict; contributory negligence:* 76 S. C., 368; 78 S. C., 379; 81 S. C., 193; 94 S. C., 143; 72 S. C., 389; 114 S. E., 502; 102 S. C., 170; 58 S. C., 491; 113 S. E., 277; Ell. on Railroads, Sec. 1167. *Failure to give signals did not necessarily cause collision:* 84 S. C., 127; 63 S. C., 271; 65 S. C., 532; 59 S. C., 99; 76 S. C., 66. *The greater the danger the greater the care:* 114 S. E., 500; Ell. on Railroads, Secs. 1164, 1166.

*Messrs. Whaley, Barnwell & Grimball,* for respondent, cite: *Crossing cases:* 90 S. E., 260; 109 S. E., 123; 113 S. E., 277; 114 S. E., 500; 114 S. E., 761; 115 S. E., 628; 115 S. E., 631; 118 S. E., 531.

. October 28, 1924.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

"This action was commenced July 13, 1921, for the recovery of $2,999 damages for the destruction of a Ford roadster automobile by collision with a train of defendant at Seven Mile Crossing, Charleston, S. C., September 11, 1920. The case was brought to trial October 17, 1922, and, the jury failing to agree, a mistrial was ordered. The case again came on for trial April 12, 1923, before his Honor,

Judge Rice, and a jury, when a verdict for the full amount
claimed, $2,999, was rendered for plaintiff ($500 actual,
and $2,499 punitive, damages). A motion for a directed
verdict made by defendant was refused. A motion for a
new trial was duly made and on July 20, 1923, Judge Rice
made an order setting aside the verdict and granting a new
trial, unless the plaintiff within 10 days consent to remit
all of the verdict as to punitive damages, except $1,200.
Plaintiff duly remitted and consented to a verdict of $1,-
700, ($500 actual damages and $1,200 punitive damages),
in conformity with said order. Judgment upon said verdict
was duly entered, and this appeal is from said judgment and
the order for new trial *nisi*. The exceptions for appeal are
to the refusal of the motion for directed verdict, the Judge's
charge, and refusal to charge, modifications of requests to
charge, and to the order for new trial *nisi*."

The exceptions are nine in number. As to the ex-
1-2  ceptions complaining of error in not directing a ver-
dict as asked for by the appellant we see no error on
the part of his Honor in refusing, under the decisions of this
Court in the cases of *Callison v. Railway,* 106 S. C., 123; 90
S. E., 260. *Wideman v. Hines,* 117 S. C., 516; 109 S. E.,
123. *Bain v. Railway,* 120 S. C., 370; 113 S. E., 277. *Chis-
olm v. Railway,* 121 S. C., 394; 114 S. E., 500. *Keel v.*
*Railway,* 122 S. C., 17; 114 S. E., 761. *Curlee v. Railway,*
122 S. C., 361; 115 S. E., 628. *McMaster v. Railway,* 122
S. C., 375; 115 S. E., 631. *White v. Railway* (S. C.), 118
S. E., 531.

As to the exceptions which complain of error as to
3-4  his Honor's charge and his refusal to charge certain
requests and his modifications of requests to charge,
we see no error on the part of his Honor as complained of by
the exceptions.

His Honor gave a full, complete, and fair charge, cov-
ering the duties of a traveler upon approaching a railroad
crossing. The charge as a whole was fair and impartial,

and covered the whole law of the case as applicable to the pleadings and the evidence in the case, and was nowhere prejudicial to the appellant.

His Honor fully and fairly instructed the jury as to the law of the case, and left the facts to them, and they found a verdict against the defendant for $2,999. Upon a motion for a new trial his Honor granted an order *nisi,* cutting the verdict down to $1,700.00.

A motion for a new trial rests in the sound discretion of the Judge. We see no error as complained of in the exceptions. All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting): Unless the immunity accorded to a railroad company, in crossing cases, by reason of the gross contributory negligence of the traveler upon the highway, is by judicial decisions to be relegated to the realm of negligible myths, I cannot conceive of a clearer case for its application than the present, taking the account given by the driver of the automobile at its face value.

The local situation was this: Running north from Charleston there are four tracks of the railroad; on the extreme right is the northbound passing track; next (to the left) is the northbound main line; then still further to the left is the southbound main line; and on the extreme left is the southbound passing track. For convenience, I will refer to them as tracks 1, 2, 3, and 4. The driver of the automobile approached a highway crossing some seven miles north of Charleston from the west; the City of Charleston being on his right. He would naturally reach track No. 4 first. He says that he approached the crossing traveling at about 5 miles per hour; that a string of box cars on track No. 3 obstructed his view of the track in the direction of Charleston; that they were located about 20 feet below the crossing, to his right; that he crossed over the first track he

came to, track No. 4, and got to the middle of track No. 3 upon which the box cars were standing when he heard the train coming from the direction of Charleston, running on track No. 2. He states the distance between the nearest rails of track No. 2 and track No. 3 to be 8 feet, 4 inches, and the width between the rails of track No. 3 to be more than 4 feet. The Court may take judicial notice of the fact that the standard gauge is 4 feet, $8\frac{1}{2}$ inches; so that at a point in the middle of track No. 3 he was 10 feet, 6 inches from the nearest rail of track No. 2, up to this time, although his view was obstructed in the direction from which the train was approaching, he had made no effort to stop, and, although he could have stopped his car in 5 or 10 feet, he still made no effort to stop after he admits that he heard the train coming. If his view of the train was obstructed, necessarily the view of the engineer and fireman was also obstructed. It is inconceivable to me that the collision could have occurred, according to the driver's own statement, otherwise than by his emerging from behind the string of box cars and heedlessly getting on the track, without the slightest effort on his part to look out for an approaching train.

It is not an unfounded assumption that the last deliberate deliverance of this Court (*Chisolm v. R. Co.,* 121 S. C., 394; 114 S. E., 500), in which a most elaborate and logical opinion was prepared by Mr. Justice Marion, and concurred in by the entire Court, was intended to be a settlement of the law and a touchstone of the respective rights and duties of railroads and travelers at highway crossings. It is a distinct disappointment to realize that what appears to have been so clearly intended is not now so regarded.

It is not necessary to repeat the principles declared in that case, but an examination of it will demonstrate the flagrant breach of the traveler's duty in the present case, and lead to the conclusion of his gross contributory negligence.

A primary inquiry is whether or not there was any evidence tending to show that the statutory signals were not given. There was only one witness for the plaintiff, the driver of the car, and he testified that he did not hear either bell or whistle.

The testimony was received without objection; it was, therefore, evidence in the case. The probative value of the evidence depended upon the circumstances. The mere statement of a witness that he did not hear the ringing of the bell is valueless as evidence, unless it further appears that the witness was able to hear and was in a position and under conditions where he would probably have heard the sound had it been made; this inference is for the jury. The plaintiff's driver testified that he was driving slowly, at a the rate of 5 miles an hour; that his hearing was good. He certainly was where he could have heard the signals if he had been standing on the ground or had stopped his car. Whether the conditions in which he was at the time, in a Ford car, going at 5 miles an hour, were such as to render it improbable that he could have heard the signals if given is a question which this Court could not decide. *Callison v. R. Co.,* 106 S. C., 123; 90 S. E., 260. *Cotton v. R. Co.,* 99 Minn., 366; 109 N. W., 835; 8 L. R. A. (N. S.), 643; 116 Am. St. Rep., 422; 9 Ann. Cas., 935; 1 Wig. Ev. (1st Ed.), § 664; 23 C. J., 40. The fact that the driver was not attentively listening for the signals might affect the weight to be given his statement or might be considered upon the question of contributory negligence, but it would not affect the admissibility of his statement.

The authorities characterize this evidence as "slight", but sufficient to carry the issue to the jury. The rule declared in *Callison v. R. Co.,* 106 S. C., 123; 90 S. E., 260, that evidence of failure to give the statutory signals for a highway crossing is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and, therefore, sufficient to carry that issue to the jury, is an exceedingly

harsh one, and does not commend itself to my sense of reason and justice. I feel bound, however, to recognize it as the law of this jurisdiction. That case holds too:

"True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, unless the evidence is susceptible of but one inference."

Now, in view of the utter absence of evidence to sustain any of the other allegations contained in the complaint, of the slender thread which holds this particular act of negligence in the case, and of the overwhelming positive evidence, buttressed by the physical situation that the signals were given, I think that the Circuit Judge would have been thoroughly justified in holding that the evidence was susceptible of but one inference; namely, that, if there was a failure to give the signals, it was not due to recklessness, willfulness, or wantonness.

I think that the Circuit Judge was in error in refusing the defendant's eighth, tenth, and thirteenth requests. (The requests to charge will be reported.)

The eighth request contained a perfectly sound legal proposition, sustained by *Bamberg v. R. Co.,* 72 S. C., 389; 51 S. E., 988; Elliott on Railroads (3d Ed.), § 1663, and many other authorities. The Circuit Judge not only refused the request, but emphasized his refusal in saying: "I won't charge you that in this case"; that there might be cases in which this law was applicable, but this is not one of them.

He, in effect, held that in this case it was not necessary for the driver of the automobile to have stopped as well as looked and listened, if the circumstances required it, practically a charge upon the facts.

His refusal of the tenth request was in direct conflict with the decision of this Court in the *Chisolm Case,* where it is declared that the traveler "must look and listen at a

place and in a manner that will make the use of his senses effective."

The thirteenth request was in conformity with the decisions of this Court without exception, particularly in the *Bain Case,* 120 S. C., 370, the *Chisolm Case,* and the *Cable Piano Case.* To hold that a traveler who has full opportunity to observe the approach of a train, and who does not look even, but enters the crossing directly in front of the approaching train, is excused from the charge of gross contributory negligence upon the ground that "his attention might be attracted by something else" would be to excuse him in every case, and to charge the railroad company with the consequences of an act for which it was not responsible. At most, as is held in the *Chisolm Case,* the object of the travelers' distraction must have been due to the negligence of the railroad company.

MR. JUSTICE MARION concurs.