## 11591

### SAULS v. A. C. L. RAILROAD CO.

(125 S. E., 34)

1. RAILROADS—WHETHER STATUTORY SIGNALS GIVEN HELD FOR JURY.—
In action for damage sustained by automobile driver struck by defendant's train at crossing, whether statutory signals were given on train's approach to crossing was for jury on conflicting evidence.

2. RAILROADS—FAILURE TO GIVE STATUTORY SIGNALS NEGLIGENCE PER SE.—Failure to give statutory signals on train's approach to crossing was negligence *per se*.

3. RAILROADS—CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE DRIVER HELD FOR JURY.—In action for damages sustained by driver of automobile in crossing collision, in which it was claimed that the driver was guilty of gross contributory negligence in failing to look for approach of train before crossing track, conflicting evidence *held* to make question one for jury.

4. RAILROADS—QUESTION OF PUNITIVE DAMAGES FOR INJURIES AT CROSSING HELD FOR JURY.—In action for damage sustained by automobile driver in crossing collision, in which the evidence as to whether statutory signals were given on train's approach to crossing was conflicting, submission of question of punitive damages *held* proper.

Before BOWMAN, J., Orangeburg, June, 1923.   Affirmed.

Action by J. C. Sauls against Atlantic Coast Line Railroad Company.   Judgment for plaintiff, and defendant appeals.

Plaintiff testified that the road along which he was driving was parallel with track; that on approaching crossing he looked, but saw no train; that on arrival at crossing he slowed up, looked for train, but heard neither whistle

---

NOTE: On violation of rule adopted by railroad company as to giving of signals as evidence of negligence toward member of public, see notes in 8 L. R. A. (N. S.) 1063; L. R. A. 1917C, 801.

On the question of care required of driver of automobile at railroad crossings, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

On credibility and effect of testimony of person injured at railroad crossing that he looked and listened, where he must have detected the train had he looked or listened, see note in L. R. A. 1915B, 140.

nor bell, and saw no train; that he proceeded to cross track, and did not see train until immediately before struck; and that train must have been running about 50 or 60 miles an hour. Two other witnesses, who were near crossing at time of accident, also testified that the whistle was not blown or bell rung as train approached crossing. Defendant's employees and other witnesses testified that the signal was given.

*Messrs. Henry E. Davis, P. L. Felder, Jr.,* and *Raysor, Moss & Lide,* for appellant, cite: *Law as to crossing accidents:* 121 S. C., 394; 120 S. C., 370; 119 S. C., 348; 117 S. E., 55.

*Messrs. Ed C. Mann* and *William C. Wolfe,* for respond- . ent cite: *Failure to give statutory signals is negligence per se:* 106 S. C., 123; 83 S. C., 327; *and respondent could recover unless guilty of gross contributory negligence:* 83 S. C., 327; 73 S. C., 374. *Punitive damages:* 106 S. C., 129.

October 28, 1924.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

"This action was brought in the Court of Common Pleas for Orangeburg County for damages on account of personal injuries to plaintiff and the wreck of his automobile truck in a collision with a train of the defendant at about 1:00 o'clock in the afternoon on February 25, 1922, at the intersection of a public road and defendant's railroad track, a short distance outside of the limits of the City of Orangeburg. The case was tried at the June, 1923, term of Court before Hon. I. W. Bowman, presiding Judge, and a jury. After the close of all the testimony the defendant moved for the direction of a verdict for the defendant, on the grounds that the testimony shows, and the plaintiff admitted in his testimony that he had failed to look as he approached the railroad track, and that the collision and injury occurred

as a result of the contributory negligence of the plaintiff, and further that there is no evidence from which the jury may find a verdict for punitive damages. The Court overruled this motion and submitted the case to the jury, and a verdict was rendered in favor of the plaintiff for the sum of $850.00. Judgment was duly entered on this verdict. Due notice of intention to appeal to the Supreme Court was served by the defendant."

The exceptions, three in number, raise two questions— First: Does the testimony show conclusively that the respondent was guilty of gross contributory negligence? and second: Is there any testimony warranting the infliction of punitive damages?

There was conflicting testimony as to whether the statutory signals were given for the road crossing. If the signals were not given, that was negligence *per se*.

The evidence as to the negligence of respondent was also conflicting, and, in view of the evidence, it was not the duty of his Honor to say that the respondent was guilty of gross contributory negligence, in view of all the testimony in the case. It was proper for his Honor to refuse the motion for a directed verdict and submit the case to the jury for their determination.

The case does not show that the jury awarded any punitive damages. The respondent says that his truck cost $1,-200, that he was injured, suffered pain, and was laid up for two months.

The verdict of the jury was for $850. However, as that may be, his Honor was right in submitting to the jury the question of punitive damages, under *Callison v. Railway Co.,* 106 S. C., 129; 90 S. E., 260.

The exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MESSRS. JUSTICES COTHRAN and MARION dissent.

MR. JUSTICE COTHRAN (dissenting) : If the verdict in this case is to stand, in candor to the legal profession, the *Cable Piano Case,* 94 S. C., 143; 77 S. E., 868; the *Bain Case,* 120 S. C., 370; 113 S. E., 277, and the *Chisolm Case,* 121 S. C., 394; 114 S. E., 500, should all be overruled, and the principle announced that the railroad company is an insurer of the safety of a traveler at a crossing, regardless of his conduct and of the statute according the railroad company immunity when the circumstances show beyond any other reasonable inference the gross contributory negligence of the traveler.

The plaintiff was traveling in a covered Ford delivery truck; there were closed doors at the rear of the truck, and the top and sides extending beyond the driver's seat, so that, sitting on the left side, he would have to lean out to see a train coming from the right. He was in the highway, traveling from east to west in the direction of Orangeburg. The railroad from Cameron to Orangeburg runs from the northeast a southwesterly direction towards Orangeburg, crossing the highway just outside of Orangeburg. The highway is not parallel with the railroad, but approaches it at an acute angle. About half a mile east of the crossing, fronting on the highway, is the Stroman house. Back of it, between the house and the railroad, is a body of woods. From the Stroman house and woods to the crossing there is an open field. As the plaintiff testified: "There are no obstructions at all in that field; nothing to prevent you seeing train, if you look." It is triangular in shape; the premises of Stroman and the woods forming the base, and the railroad and the highway converging at the crossing, the two sides.

The plaintiff testified that at a point about 100 yards from the crossing he leaned out to the right, looked up the rail road, and saw no train; that he did not look in the direction of Cameron, from which the train was coming, again, but slowed up as he approached the crossing *and looked straight*

*ahead.* He did not stop, he did not listen, he did not look towards the point of danger, but drove onto the crossing, resting in the confidence that it was past the usual time, and that the train had passed. A witness for the plaintiff, a colored man by the name of Hane, was going in the same direction, with a load of wood on a two-horse wagon upon the top of which he was riding. He was about 150 yards from the crossing at the time of the collision. The plaintiff had passed Hane in the road a few minutes before, necessarily at a point more than 150 yards from the crossing. Hane testified that the plaintiff passed him between the Stroman house and the crossing, and that "just as he passed me I looked right then (that is, across the triangle) and saw the train coming." He further testified: "I did not have any trouble in seeing the train at that time; there ain't any trouble, because I had my eyes. I simply looked and saw the train. All I had to do was look and see the train; that is all." He also testified that there was nothing in the world to prevent the plaintiff from seeing the train coming, unless it was the side of his truck. "If he had poked his head out of the side of the truck he could have seen the train coming, because the train was coming at that time."

Assuming, as I must, that the plaintiff looked at a point 100 yards from the crossing and did not see the train, it is absolutely certain that, if he had looked at any other point between the 100-yard point and the crossing, he would have seen the train coming. He admits that between those points he did not look in the direction from which the train was coming; and the undisputed evidence is that from such point a train could be seen from 1½ to 2 miles.

It seems to me that the case is absolutely controlled by the *Cable, Bain,* and *Chisolm Cases.* Even the *Callison Case* (106 S. C., 123; 90 S. E., 260) is not in conflict, for there the circumstance that differentiated it from the *Cable Case* was the fact that rain on his windshield had obscured his vision. In the *Wideman Case* (117 S. C., 516; 109 S. E.,

123) weeds and corn obstructed the travelelr's view. Here there was nothing. In the *Bain* and *Chisolm Cases* the attention of the traveler had been distracted by a situation caused by the negligence of the railroad company. Here there is not the slightest claim that the plaintiff's attention was diverted by anything.

In the case of *Bain v. Railroad Co.,* 120 S. C., 370; 113 S. E., 277, in a unanimous opinion, this Court declared:

"Under ordinary circumstances, the traveler approaching a crossing, who has full opportunity of seeing the approach of the train in time to avoid the collision, and who does not look, is, under the *Cable Piano Case,* 94 S. C., 143; 77 S. E., 868, guilty, not only of negligence, but of gross negligence, and as a matter of law, when such facts appear, the Court may so declare. But when there are circumstances tending to explain his apparent gross negligence, particularly when they are brought about by the negligence of the railroad company, the issue becomes one of fact for the jury."

MR. JUSTICE MARION concurs.